## THE MERCHANTS' BANK OF NEW-YORK *against* SPALDING.

The circulation of the bills or notes of the banks of other states, of a less denomination than five dollars, is illegal in this state, the act of 1830 (*ch.* 295) being still in force.

Where a note made by a citizen of New Jersey, payable at a bank in that state, was discounted for him by such bank, the amount being paid in notes of the bank of a less denomination than five dollars, and sent by him to the endorser of the note residing in this state to be used, and actually used here in the purchase of wheat; the officers of the bank at the time of making the discount being informed of the use intended to be made of the notes, but there was no agreement that they should be so used; nor did it appear that the maker of the note or the officers of the bank were informed that the circulation of such notes was prohibited by our laws; it was *Held*, in an action against the endorser, brought for the benefit of the foreign bank, that these facts constituted no defence, and that it was proper for the judge on the trial so to instruct the jury.

Citizens of another state, making contracts in that state to be performed there, are not chargeable with a knowledge of our laws.

THE action was brought against the defendant as the endorser of a promissory note made by Jackson Pound, on the 3d day of November, 1845, for $2875, payable to the order of the defendant, at the Farmers and Mechanics' Bank of Rahway, New Jersey, in four months after date. The making and endorsement of the note, and its presentment, dishonor, and notice of non-payment, were admitted.

The defence was, that the note was discounted by the bank in New Jersey under an agreement or understanding that the proceeds should be paid in small bills to be sent to and paid out in the State of New-York, where the circulation of such notes was illegal. The trial was had at the New-York circuit, before the late Justice MOREHOUSE, in October, 1847.

It appeared that the note was procured to be discounted by Pound, the maker, who was a resident of New Jersey; that the proceeds were received in the notes of the New

Jersey bank, about half of which were notes of a lower denomination than five dollars; that Pound sent the notes to the defendant at Lockport, to be paid out by him in the purchase of wheat.

*Pound*, the maker, was examined as a witness on the part of the defendant, and testified, that about a week before the note was discounted, he met the president of the Farmers and Mechanics' Bank of Rahway, in a street in the city of New-York, where he handed him the note, saying that he wished to get the money on it, that the money was going to the west to pay for flour, and if it would be any benefit he would take small bills for part; that he was told by the president to come to the bank in about a week, when he would let him know whether it would be discounted. The witness went to the bank at the time appointed and received the notes, which were at his request inclosed in a wrapper and directed to the defendant at Lockport, and the witness sent them by express. The witness said he thought some of the bank officers inquired of him whether some small notes would answer, and that he said he thought they would; and that he thought the president said they would like to have the money well circulated, and that he and the cashier said it was an object with them to know where the notes were going.

The defendant also examined *Mr. King*, the cashier of the bank at Rahway, who testified that the note was discounted by the board of directors, Pound not being present; that there was no agreement respecting the kind of notes in which the proceeds were to be paid, or where they were to be sent or circulated; and all that was said upon the subject was a remark by one of the directors that Mr. Pound, who offered the note, was purchasing flour in the western part of the State of New-York, and would use the small bills of the bank to pay for it.

It was proved that the action was brought for the benefit of the Rahway bank by the nominal plaintiff as its agent

The defendant's counsel requested the judge to hold that the facts proved conclusively established a defence; and excepted to his refusal so to decide.

He then prayed that the jury might be instructed that the circulation of small bills in this state was illegal, and that if the bank in New Jersey discounted the note with notice that the small bills were to be put in circulation in the State of New-York, and with intent that they should be so circulated, the plaintiffs could not recover; and that the facts proved were evidence from which the jury might find an agreement between the bank and Pound that the bills should be circulated in New-York. The judge declined to charge as requested; but advised the jury that the circulation in this state of small bills of foreign banks was not illegal, and directed them to find a verdict for the plaintiffs for the amount of the discounted note and interest, which they accordingly did; and the defendant excepted.

The judgment was affirmed at a general term (12 *Barb.*, 302), and the defendant appealed to this court.

*George Bowman* for the appellant.

I. At the time of the discounting of the note on which the plaintiffs sue, by the Farmers and Mechanics' Bank of Rahway, the circulation of bills under the denomination of five dollars, issued by banks not chartered by the laws of this state, was illegal. (*Laws of* 1830, 357, § 1.) The acts of 1835 (*Laws*, 37) and of 1838 (*Laws*, 26), by which the act of 1830 was modified, *are repealed by the act of* 1839. (*Laws*, 26.) (*De Groot* v. *Van Duzer*, 20 *Wend.*, 398; 17 *Wend.*, 174; *Pratt* v. *Adams*, 7 *Paige*, 616; *see tit. of act of* 1839, *Laws*, 26; *Laws* 1839, 329, § 2; *State* v. *Stephenson*, 2 *Bailey*, 334; *Burgett* v. *Burgett*, 1 *Ham.*, 469; *Corning* v. *McCullough*, 1 *Comst.*, 49, 62; *Gale* v. *Mead*, 4 *Hill*, 111; *Bowen* v. *Lease*, 5 *Hill*, 225; *Williams* v. *Potter*, 2 *Barb.*, 316; *Dugan* v. *Gittings*, 3 *Gill*, 138; *People* v. *Utica*

*Ins. Co.*, 15 *Johns.*, 380, 381; *Watervliet Turnpike Co.* v. *McKean*, 6 *Hill*, 619.)

II. The contract out of which the plaintiffs' cause of action arises was made with reference to the laws of the State of New-York. 1. The note in suit was made and endorsed at Lockport, in this state. 2. The business, for the purposes of which the discount was applied for, was in this state. 3. The direction on the package of money into this state " was written thereon at the bank by the cashier." 4. The defendant, the endorser, resided in this state, by the laws of which the parties well knew his liability, if any, was to be determined and enforced. (*See Jacks* v. *Nichols*, 1 *Seld.*, 178.) 5. The bank discounting this note were the very parties against whose operations, as injurious to the people of this state, the policy of the act was directed. There is little reason to presume ignorance on their part of the law in question in such a case. (CHAMBRE, J., *in Morck* v. *Abel*, 3 *Bos. & Pull.*, 39.)

III. If this was not so, as a conclusion of law upon the evidence, then it was a question of fact for the jury, and should have been submitted to them. (*De Groot* v. *Van Duzer*, 20 *Wend.*, 402, 403; *Fireman's Ins. Co.* v. *Walden*, 12 *Johns.*, 517; *Tracy* v. *Swartwout*, 10 *Peters*, 96; *Fitzgerald* v. *Alexander*, 19 *Wend.*, 402; *Read* v. *Hurd*, 7 *Wend.*, 408; *Roseboom* v. *Billington*, 17 *Johns.*, 187; *Fiero* v. *Betts*, 2 *Barb.*, 639.)

IV. A term, and mutually understood and accepted condition of the discount was, that small bills should be taken, and should receive a good circulation in the State of New-York. Witness told the president of the bank " that it (the money) was going to Lockport, and that small bills would answer for part." He told the officers of the bank " that he would take small bills, and give them a good circulation, and they said they would rather he should." " When he offered the note for discount, the president and cashier said it would be an object with them to know where the notes were going." "He told the president that he (witness)

would like to have the money : that it was going out west, and that if it would be any benefit, he would take small bills." The notes were "left to be transmitted to Lyman A. Spalding, Lockport, State of New-York. The direction on the package to Spalding had been previously written thereon at the bank, by the cashier."

The cashier of the bank states that, when the note was laid before the directors of the bank for discount, one or two of them said " that Jackson Pound, the offerer of the note, was going to purchase flour in the western part of New-York, and would use the small bills of the bank received for the note in payment for the flour."

V. If this was not so, as a conclusion of law upon the evidence, then it was a question of fact for the jury, whether such was the agreement and understanding of the parties or not, and it should have been submitted to them. (*See point III.*)

VI. The plaintiffs (or the bank of Rahway, whom the plaintiffs represent) were the primary agents in the violation of the law. They knew the intention to violate it, and furnished the means to carry the intention into effect. 1. One is always held to intend that which is the natural or probable consequence of his act. (*Griswold* v. *Sheldon*, 4 *Comst.*, 593; *Safford* v. *Wyckoff*, 1 *Hill*, 12; *Coles* v. *Strick*, 15 *Adol. & Ellis*, *N. S.*, 69 *Eng. Com. Law R.*, 2; PARKER, J., *in Bayley* v. *Taber*, 5 *Mass.*, 292, 293.) 2. Where the intention of one of the parties to a contract is to enable the other party to violate a law of the state, the contract is void. .(WAL-WORTH, Ch., *in Pratt* v. *Adams*, 7 *Paige*, 654; *De Groot* v. *Van Duzer*, 20 *Wend.*, 390. *See, also, Waite* v. *Jones*, 1 *Hodg.*, 166; *Pellecot* v. *Angel*, 1 *Gale*, 187; *Gould* v. *Williams*, 1 *Harr. & Woll.*, 344; *Cannan* v. *Bryce*, 3 *Barn. & Ald.*, 181; 5 *E.C.L.R.*, 257. *See, also, Perkins* v. *Savage*, 15 *Wend.*, 412; *Ruckman* v. *Bryan*, 3 *Denio*, 340; *Lightfoot* v. *Tenant*, 1 *Bos. & Pull.*, 551; *Langton* v. *Hughes*, 1 *Maule & Sel.*, 593.)

VII. Citizens of other states, as well as our own citizens, are chargeable with notice of our public laws, when the transaction looks, in whole or part, to consummation in this state. (*Wooten* v. *Miller*, 7 *S. & M.*, 380; *Root* v. *Goddard*, 3 *McLean*, 102; *Hayden* v. *Davis*, 3 *McLean*, 276; *Armstrong* v. *Toler*, 11 *Wheaton*, 258; *Monroe* v. *Douglas*, 1 *Seld.*, 452.) It would be very extraordinary if a statute in derogation of the common law rights of citizens of this state, enacted for the public good, should be inoperative when the inhibited acts were done by citizens of another state. (*Pennington* v. *Townsend*, 7 *Wend.*, 279. *See, also, Executors of Cambioso* v. *Assignees of Maffit*, 2 *Wash. C. C. R.*, 98; *Graves* v. *Delaplaine*, 14 *Johns.*, 146; *Hunt and others* v. *Knickerbocker*, 5 *Johns.*, 327; *Robinson* v. *Bland*, 2 *Burr.*, 1077, 1084; *Le Breton* v. *Miles*, 8 *Paige*, 262; 2 *Kent's Com.*, 6th ed., 459; *Andrews* v. *Herriot*, 4 *Cow.*, 513, *note; Whitaker* v. *Cone*, 2 *Johns. Cas.*, 58; *Lyon* v. *Richmond*, 2 *Johns. Ch. R.*, 60.)

VIII. The plaintiffs, having acted in defiance of the laws of this state, should not have the assistance of those laws to enable them to recover. (*Morck* v. *Abel*, 3 *Bos. & Pull.*, 35; *Hunt* v. *Knickerbocker*, 5 *Johns.*, 334; *Leavitt* v. *Yates*, 4 *Edw. V. C. Rep.*, 170; *Blatchford* v. *Preston*, 8 *T. R.*, 92; *Bensley* v. *Bignold*, 5 *Barn. & Ald.*, 335; *Bank of the United States* v. *Owens*, 2 *Peters*, 527; *Belding* v. *Pitkin*, 2 *Caines*, 148; *Green* v. *Seymour*, 3 *Sandf. Ch. Rep.* 292; *Atty. General* v. *Life & Fire Ins. Co.*, 9 *Paige*, 475; *Story on Conflict of Laws*, §§ 246, 247. *See, also*, 2 *Kent's Com.*, 6th ed., 458; *Leavitt* v. *Blatchford*, 5 *Barb.*, 28; *Leavitt* v. *Palmer*, 3 *Comst.*, 19; *Tylee* v. *Yates*, 3 *Barb.*, 226; *Bell* v. *Quin*, 2 *Sandf. S. C. Rep.*, 146; *Hooker* v. *Vandewater*, 4 *Denio*, 352; *Walker* v. *Johnson*, 7 *Hill*, 387; 5 *Hill*, 27; *Callegan* v. *Hallett*, 1 *Caines*, 104; *New Hope Del. Bridge Co.* v. *The Poughkeepsie Silk Co.*, 25 *Wend.*, 648; *Perkins* v. *Savage*, 15 *Wend.*, 412; *Nellis* v. *Clark*, 4 *Hill*, 424; 20 *Wend.*, 24; *Griffith* v. *Wells*, 3 *Denio*, 226; *Griswold* v. *Waddington*, 16 *Johns.*, 438; *Farrar, Admr.*, v. *Barton*, 5 *Mass.*, 397; *Seidenlerger* v.

The Merchants' Bank of New-York *against* Spalding.

*Charles*, 4 *Serg. & Rawle*, 159; *Edgar* v. *Fowler*, 3 *East*, 225; *Jimsen* v. *Martin*, 13 *Alab.*, 21; *Filson's Trustees* v. *Himes*, 5 *Barr*, 452; *Howell* v. *Fountain*, 3 *Kelly*, 176.)

*B  W. Bonney* for the respondents.

The justice presiding at the trial was correct in refusing to charge the jury as requested by defendant's counsel. 1. In November, 1849, the circulation in the State of New-York of bills issued by foreign corporations or associations, under the denomination of five dollars, was not illegal. (*Sess. Laws*, 1830–1839, *passim; Rex* v. *Cator*, 4 *Burrows*, 2026; *Warren* v. *Windle*, 3 *East*, 205; *Commonwealth* v. *Kimball*, 21 *Pick.*, 373; *Commonwealth* v. *Churchill*, 2 *Metc.*, 118; *Dane's Abridg.*, ch. 196, *tit. Statutes*, 589, &c.; *Tattle* v. *Grimwood*, 3 *Bing.*, 493; *Palmer* v. *Moore*, 9 *Barn. & Cress.*, 754; *Tonnele* v. *Hall*, 4 *Comst.*, 140, 144; *Fort* v. *Burch*, 6 *Barb.*, 60, 69–74; *W. and W. Turnpike* v. *The People*, 9 *Barb.*, 161, 169, 70; *Bartlett* v. *King*, 12 *Mass.*, 537; 1 *Kent's Com.*, 463, *marginal page; Dwarris on Statutes*, 672 *to* 676.)  2. The transaction with the bank of Rahway was entirely in the State of New Jersey, and made with reference to the laws of that state, and with no intent, on the part of the bank or its officers, so far as appears, to violate any law of New-York; nor was any act done by the bank or its officers to aid in any such violation.  The contract must be governed by the *lex loci contractus.*  (*Chitty on Contracts, Perkins' ed.*, 1848, 418; *Holman* v. *Johnson*, 1 *Cowp.*, 341; *Biggs* v. *Lawrence*, 3 *Term Rep.*, 454; *Clugas* v. *Penaluna*, 4 *id.*, 466; *Waymell* v. *Reed*, 5 *id.*, 599; *Pellecat* v. *Angel*, 2 *Cr. Mees. & Ros.*, 311; *Armstrong* v. *Toler*, 11 *Wheat.*, 258; *Cambioso's Exr's.* v. *Maffit's Assignees*, 2 *Wash. C. C. R.*, 98; *McIntyre* v. *Parks*, 3 *Metc.*, 207.)  3. There is no evidence in the case upon which the jury could have found an agreement, between the Farmers and Mechanics'

Bank of Rahway and Jackson Pound, that the bills under the denomination of $5, received by Pound in part for the note, should be circulated in New-York.

DENIO, J., delivered the opinion of the court.

The judge was unquestionably mistaken in holding that the circulation in this state of bank notes issued by foreign corporations under the denomination of $5 was legal. The act of 1830 (*ch.* 295) declared it to be unlawful to pass, circulate or receive such notes; and subjected the offender to a penalty equal to the nominal amount of the note. In 1835, the legislature, by prospective provisions, forbade the receiving, circulating and passing of notes issued by any banking corporation or private banker, whether in or out of the state, of notes under $5, or for a sum between $5 and $10; and prescribed a penalty of five times the nominal value of the note. It also prohibited (prospectively) the banks of this state from issuing such small notes under a heavy penalty. The act repealed so much of the act of 1830, to which I have referred, as was *inconsistent* with it. The only inconsistency between the several provisions was in the amount of the penalty, if even that could be so considered. The repealing clause would probably prevent the penalty in the last act from being held cumulative, or an addition to that prescribed by the act of 1830. (*Laws* 1835, *ch.* 37, §§ 1, 2, 3, 6; *id.*, *ch.* 155; *Commonwealth* v. *Kimball*, 21 *Pick.*, 373.) The act of February 28, 1838, was passed during the suspension of specie payments, which commenced in May of the preceding year. It repealed absolutely all the provisions of the act of 1835, and provided that the small bills which might be issued by the banks of this state should not be within the protection of the act authorizing the suspension of specie payments. It then enacted, prospectively, another system of provisions against the issuing of small notes by our own banks, and against

the circulating of such notes, whether issued by institutions in or out of the state; and for the last offence it provided a penalty of five times the amount of the note; but none of the inhibitory provisions were to be operative until two years after the passage of the act. (*Laws* 1838, *ch.* 51.) By chapter 80 of the Laws of the ensuing year (*Laws* 1839, 26), the last mentioned act (of 1838) and the act of 1835 were both repealed, without qualification, by an act of a single section, containing no other provision. It will be remembered that the act of 1835 had been in terms repealed by that of 1838; and the motive of repeating the sentence of repeal was probably to prevent its being held to be revived by abolishing the act which repealed it. It will be seen by this recital that the essential provisions of the act of 1830 have never been changed at all, and hence that the doctrine of reviving a repealed statute by abrogating the act which repealed it, has no application to the case. It has at no time since 1830 been lawful to pass a foreign bank note under the denomination of $5 in this state; though at one period the offence was more highly penal than at present. It has seemed necessary to say thus much upon this part of the case, as it is a question of too practical a character to be left open to controversy.

Although the judge took a wrong view of the state of the law upon this point, the judgment ought not to be reversed unless there was a case proper to be presented to the jury upon the other questions at issue. There was no evidence upon which the jury could properly have found that there was an agreement between Pound and the bank by which the former was bound to pay out the small bills in this state. Pound had stated to the president that his business would lead him to expend the money in the purchase of flour in the western part of this state, and that small bills would be available to him; and the same thing was, in effect, communicated to the board when the note

was laid before them. This, though quite sufficient to prove a notice of the use it was intended to make of the money, did not tend to establish an agreement upon that subject. There is nothing to show that Pound was not entirely at liberty to change his mind as to the use to be made of the notes as soon as he got them; and he would not have subjected himself to an action in favor of the bank if he had immediately paid them out in New Jersey. But the jury might well have found that the bank had notice that they were expected to be paid out in New-York, and that they were actually so passed; and the question now is whether that circumstance vitiates the contract. Both parties were citizens of New Jersey. The contract was made in that state, and it was to be wholly performed in that state, and there is no evidence that either of the parties actually knew of the legal regulations respecting small bills in force in New-York. They were not chargeable with such knowledge. Even the courts of this state regard the laws of every other state as facts to be proved, and of which they cannot otherwise take notice. (*Holmes* v. *Broughton*, 10 *Wend.*, 75, 78.) It is true that where an agreement is made in one state, to be executed in another, as the laws of the latter country prevail in determining the validity of the contract, it is reasonable that the parties should be presumed to know the law of the country in reference to which they are contracting. (*Holman* v. *Johnson*, *Cowp.*, 341.) I do not doubt but that a contract might be made in another state, and to be performed there, which our courts would refuse to enforce, though none of its actual provisions were in conflict with our laws. Should parties abroad conspire to do an act in this state which was forbidden by its laws, a foreign contract, unobjectionable in its provisions, but made in furtherance of the general design, would be considered void here when its connection with the illegal enterprise was shown. In *Lightfoot* v. *Tenant* (1 *Bos. & Pull.*, 551),

the actual contract was unobjectionable, but it was part of a contrivance to violate an act of parliament concerning the East India trade, and was therefore held to be illegal. It cannot, however, be said that the parties in this case conspired to violate our laws respecting the paper currency, with which, so far as it appears, they were wholly unacquainted. It has been repeatedly held that a foreigner selling and delivering goods abroad may recover the price in the English courts, though he knows at the time of the sale and delivery that the buyer intends to smuggle them into England. (*Pellecat* v. *Angel*, 2 *Cr.*, *Mees. & Ros.*, 311; *Holman* v. *Johnson*, *supra*.) These cases, however, are said to be placed upon grounds peculiar to the revenue laws, and it is insisted that the principle ought not to be applied where legal provisions were enacted for the benefit and protection of the public. In Massachusetts, however, the rule has been applied without such a qualification. In *McIntyre* v. *Parks* (5 *Metc.*, 207), it was held that a sale of lottery tickets made in another state, where such sale was lawful, to a citizen of Massachusetts, was a valid transaction, though the seller knew that the purchaser bought them for the purpose of sale in Massachusetts, where such sale was prohibited by statute. And we are of opinion that when the act to be done in another state, the knowledge of which is sought to affect the contract, is simply a violation of a positive law, having in it nothing of an immoral nature, and when it is not shown that the parties were cognizant that the act was forbidden by the local law of such other state, and they therefore chargeable with a confederacy to defeat those laws, the contract is valid and should be enforced in such other state.

In *Pratt* v. *Adams* (7 *Paige*, 653), it was one of the express provisions of the loan that the small bills of the foreign bank should be taken, and the cashier of the bank actually brought and delivered them to the borrower in the

city of New-York.   It was therefore essentially a domestic transaction.

The judgment therefore should be affirmed.

TAGGART, J., gave no opinion.

MORSE, J., was not present.

All the other judges concurring,

Judgment affirmed.