(81 Misc. Rep. 42.)

### PRENTICE v. LADINSKI et al.

(Supreme Court, Special Term, New York County. April, 1913.)

1. PHYSICIANS AND SURGEONS (§ 24*)—ACTION FOR COMPENSATION—EVIDENCE.

In an action where a physician set up a counterclaim for compensation for professional services, evidence *held* insufficient to show that he rendered the services as a friend, and not for compensation.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. §§ 53–62; Dec. Dig. § 24.*]

2. PHYSICIANS AND SURGEONS (§ 22*)—COMPENSATION—PRACTICING WITHOUT LICENSE.

Under the New Jersey statute relating to physicians and surgeons, providing in sections 23 and 36 (3 Comp. St. 1910, pp. 3328, 3332) that nothing shall prevent any physician or surgeon in good standing and legally qualified to practice medicine or surgery in the state of his residence, from practicing in the state, but that all persons opening an office shall be deemed sojourners, and shall conform to the act, and that the act shall not apply to commissioned surgeons in the federal military service or to any legally qualified physician or surgeon of another state, taking temporary charge of the practice of a local physician, a New York physician, though not licensed in New Jersey, is entitled to compensation for services rendered a New York patient, who attempted to commit suicide in New Jersey.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. § 51; Dec. Dig. § 22.*]

3. PHYSICIANS AND SURGEONS (§ 22*)—COMPENSATION—DEFENSE.

Where all of the parties were residents of New York, and the contract for the rendition of professional services was made therein, the physician may recover compensation, even though the services were rendered in a foreign state, wherein he had no authority to practice.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. § 51; Dec. Dig. § 22.*]

4. PHYSICIANS AND SURGEONS (§ 13*)—COMPENSATION—CONTRACT OF EMPLOYMENT—AUTHORITY OF A WIFE TO EMPLOY.

A wife has authority to bind the estate of her husband for the payment of all necessary professional services rendered by the family physi-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cian in attempting to save the life of her husband, who was in a desperate condition, owing to his attempted suicide, even though the husband was in a hospital, where he would receive attention from the staff physicians.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. §§ 18–20; Dec. Dig. § 13.*]

5. PHYSICIANS AND SURGEONS (§ 23*)—AMOUNT OF COMPENSATION.

Where a physician, who was an operating surgeon of great skill, rendered professional services to one desperately ill, but did not operate himself, owing to his fatigued condition, he should be compensated according to the scale of a family physician, instead of a surgeon.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. § 52; Dec. Dig. § 23.*]

Action by Ezra P. Prentice, as trustee in bankruptcy of the estate of Morris H. Hayman, against Louis J. Ladinski, to foreclose a mortgage. Judgment of foreclosure, after deducting defendant's counterclaim.

Saul S. Myers, of New York City (Selden Bacon, of New York City, of counsel), for plaintiff.

Moss, Laimbeer, Marcus & Wels, of New York City (Charles L. Hoffman and Isidor Wels, both of New York City, of counsel), for defendant.

GIEGERICH, J. The action is brought by the plaintiff, as trustee in bankruptcy of the estate of Morris H. Hayman, bankrupt, to foreclose a mortgage, originally amounting to $9,000, made by the defendant Louis J. Ladinski to John Laimbeer, Jr., and by the latter assigned to the said Morris H. Hayman, and which mortgage, by reason of various payments on account of the principal thereof, has been reduced to the sum of $2,000. The only defendant who appeared is the said Louis J. Ladinski, who sets up a counterclaim in the sum of $2,500 for medical services rendered to the deceased bankrupt in his last illness.

Morris H. Hayman, the deceased bankrupt, was a lawyer practicing in the state of New York. On April 2, 1911, being then a bankrupt and harassed by his business troubles, he attempted to commit suicide at a hotel in Newark, N. J. He was removed on the afternoon of that day to the Newark City Hospital. His wife was communicated with, and she and her brother, Albert A. Doctor, immediately started from New York for Newark by automobile. On the way she requested her brother to get out and telephone to the defendant Ladinski, who had rendered professional service to herself and husband for many years, and to ask him to come over to the hospital where her husband was. Dr. Ladinski immediately answered the summons and came to the hospital the same afternoon, which was Sunday, and was thereafter in constant attendance upon the patient until Thursday evening. He then was absent from the hospital until Friday morning, and remained until Friday night, when he finally left, having given up hope. The patient died Saturday morning. When Mr. Hayman was first taken to the hospital, which was a public hospital, treating patients

without pay, he was put in a public ward with other patients; but after Dr. Ladinski's arrival he was transferred to a room reserved for special cases, and which he occupied alone. While the rules of the hospital did not permit Dr. Ladinski formally to take charge of the case, the hospital physicians and surgeons extended to him every courtesy and all the freedom which the rules of the hospital permitted. Dr. Ladinski was in constant attendance at the bedside of the patient, and his suggestions as to treatment were complied with, and some treatment he himself administered. At his suggestion an operation for transfusion of blood was performed. Dr. Elsberg, also of New York City, was, on the recommendation of Dr. Ladinski, called in to perform this operation. On behalf of the plaintiff various objections are made to the counterclaim, which I will consider seriatim.

[1] The evidence does not warrant the inference which the plaintiff seeks to draw that the defendant rendered the services in question as a friend, and not for compensation. The defendant had been the physician of the deceased for years. It is also true that he had been an intimate friend of the deceased. While this circumstance might have had the effect of rendering his professional services to his friend more assiduous and more anxious than they might otherwise have been, it manifestly did not change the character of the services. The failure of the defendant to make any charge on his books for this service and to send a bill for the same has no particular significance to my mind, because he knew that the estate was bankrupt, and, as he explains, he did not, until afterward, understand that he was entitled to make a charge for his services as a counterclaim to the mortgage.

[2] The plaintiff also argues that, although a licensed physician of another state not licensed in New Jersey may act as a physician or surgeon in that state if he desires without rendering himself subject to punishment, yet he may not recover fees for such service. Without quoting and going into an examination at length of the New Jersey statutes on this subject, which were put in evidence, I will state that my conclusion is that those statutes were not intended to prevent the recovery of compensation for medical services rendered under the circumstances proven in this case. Section 23 of the statute (3 Comp. St. N. J. 1910, p. 3328), referred to provides:

"That nothing in this act shall be so construed as to prevent any physician or surgeon in good standing, and legally qualified to practice medicine or surgery in the state in which he or she resides, from practicing in this state, but all persons opening any office, or appointing any place where he or she may meet patients, or receive calls, shall be deemed a sojourner in this state, and shall conform to the first section of this act."

And section 36 (page 3332) provides for certain exemptions from the operation of the act, as follows:

"This act shall not apply to the commissioned surgeons of the United States army, navy or marine hospital service while so commissioned, or to lawfully qualified physicians and surgeons residing in other states meeting registered physicians and surgeons of this state in consultation, or to any legally qualified physician or surgeon of another state taking charge of the practice of a legally qualified physician or surgeon of this state temporarily during the latter's absence therefrom and upon the written requests to said board there-

for, or to any physician or surgeon of another state, and duly authorized under the laws thereof, to practice medicine and surgery therein: Provided, that such practitioner shall not open an office or a place for the practice of his profession within the borders of this state; or to any one while actually serving as a member of the resident medical staff of any legally incorporated charitable or municipal hospital or asylum."

It seems to me the purpose of this act, when read as a whole, is clear, and that it is only those who either reside or sojourn in the state of New Jersey that are subject to the requirements of the act, and that the Legislature intentionally left entire freedom to physicians of other states to render professional services within the state of New Jersey in an occasional way, as distinguished from opening an office or appointing a place to meet patients, which latter, it is expressly provided, shall constitute a practitioner a sojourner in the state and subject him to the requirements of the act. It is a matter of common knowledge that great numbers of residents of New York state and Pennsylvania spend a large portion of their summers in New Jersey, and it is quite evident that the Legislature of the state of New Jersey meant to leave entire freedom to such residents to call their regular family physicians, or such physicians as they might select from other states, to render them professional service.

[3] But whether or not I am right in my construction of the New Jersey statute under consideration, I think that this case might, if necessary, be decided irrespective of the New Jersey statute. The parties were all residents of this state, the contract was made in this state, and the action is brought in this state. Merchant's Bank v. Spalding, 9 N. Y. 53, 63; Dyke v. Erie R. R., 45 N. Y. 113, 6 Am. Rep. 43; Faulkner v. Hart, 82 N. Y. 413, 37 Am. Rep. 574; Hoyt v. Thompson, 5 N. Y. 320; Zeikus v. Florida R. R., 153 App. Div. 345, 138 N. Y. Supp. 478.

[4] Passing now to the question of the authority of the wife to employ the defendant, I do not think in this case that there can be any serious question as to such authority. She employed the same physician that her husband had been in the habit of employing for years. It is plain from the evidence that the condition of the patient was so critical that the physician was warranted in remaining in constant. attendance. The wife was also at the hospital during the entire time and was aware of the continuous attendance of the physician. It was not incumbent upon the wife to send the defendant away, upon the theory that the hospital physicians could and would render all the service necessary. The case was a most critical one. If the patient's life was to be saved, the unremitting attention of a skilled physician was called for; and such attention could not, in the nature of things, be received from the hospital physicians, there being between 300 and 400 patients at the time in question.

[5] Coming now to the final point in the case, namely, the compensation to be allowed the defendant, I am in accord with the contention of the plaintiff that, although the evidence showed the defendant to be an operating surgeon of great skill, nevertheless for his attendance upon this patient he should be compensated rather upon the scale of

charges for services of a family physician than the much higher scale of services of an operating surgeon. He performed no operation. The operation that was performed was performed by another surgeon of his selection; he himself being so worn out by his vigil of the night before that he was not in condition to perform it. The testimony of the numerous medical experts as to the value of the services rendered varied widely. Upon consideration of all that testimony and of all the facts in the case, I fix the compensation for such services at the sum of $750.

After deducting this amount from the sum of $2,000 remaining unpaid upon said mortgage, there remains due thereon the sum of $1,250, with interest. The plaintiff is therefore entitled to a judgment of foreclosure and sale for the amount named and interest. I do not think costs should be allowed to either side.

Let requests for findings be submitted, with proof of service.