## MAGGIE BOLFING v. BEN SCHOENER, AS SHERIFF OF STEARNS COUNTY, AND ANOTHER.

### HAGEN-BERG COMPANY, INC., APPELLANT.[1]

January 16, 1920.

No. 21,452.

**Cancelation of mortgage.**

Evidence examined and *held* sufficient to sustain the finding that the indebtedness secured by the mortgage in controversy arose out of wagers on the rise or fall of the market price of grain.

Action in the district court for Stearns county to set aside a real estate mortgage. The separate answer of Hagen-Berg Company alleged that the mortgage was given to secure certain advances paid Joseph Bolfing to be used in his grain elevator business. The case was tried before Roeser, J., who made findings and dismissed the action as to the sheriff and ordered judgment in favor of plaintiff. The motion of defendant corporation for amended findings was granted in part and denied in part. From an order denying its motion for a new trial, the Hagen-Berg Company appealed. Affirmed.

*Jamison, Swan, Stinchfield & Mackall,* for appellant.

*Paul Ahles,* for respondent.

TAYLOR, C.

Action to cancel a real estate mortgage on the ground that it was given to secure an indebtedness incurred by gambling in wheat options. The court found that the indebtedness arose out of gambling transactions

[1] Reported in 175 N. W. 901.

and ordered judgment canceling the mortgage. Defendant appealed from an order denying a new trial and contends that the evidence does not justify the finding.

Joseph Bolfing bought grain and operated a small elevator in the village of Cold Springs in Stearns county. Defendant is a grain commission merchant engaged in buying and selling grain on the Minneapolis Chamber of Commerce, of which it is a member. Joseph Bolfing had very little capital and made an arrangement with defendant under which defendant advanced him money to buy grain and he shipped his grain to defendant to be sold for his account on the Minneapolis market. On April 24, 1917, he and his wife executed the mortgage in controversy on their homestead to secure the balance of defendant's account against him. He died on July 5, 1917, and thereafter plaintiff, his widow, brought this action. The balance of the account remaining unpaid at his death was the sum of $907.08 and the interest thereon.

Bolfing began dealing in options on the Minneapolis Chamber of Commerce through defendant as his broker in 1915 and continued such dealings until July, 1917, and the evidence fully justified the finding that no purchase or sale of actual grain was intended or contemplated in any of these option deals by either Bolfing or defendant. The court further found "that all of such transactions were wagers upon the rise or fall of the market, were contrary to law and void." There is no pretense that the passing of actual grain was ever contemplated in any of these option deals. They were to be settled by paying or receiving the amount of the rise or fall in the market price of the grain and were clearly illegal unless justifiable as "hedges." In the territory tributary to Minneapolis the price of grain is fixed by the Minneapolis market—the price where purchased being the Minneapolis price less the expense of shipping it from the place of purchase to Minneapolis and the profit or charge of the buyer for handling it. The price of grain varies from day to day, and the country buyer, who pays the market price at the time he receives the grain, stands to lose if the price should fall before the grain arrives at the place where he sells it. To guard against such loss a practice has grown up known as "hedging." Under this practice, in theory at least, when a buyer purchases grain in the country he also sells on the board of trade for future delivery a sufficient quantity to cover such purchase, so that

whether the price goes up or down his gain on one transaction will offset his loss on the other. As sales for future delivery in the terminal markets are made for delivery on the last day of either May, July, September or December, a country buyer, who is "hedging," usually sells his grain when it arrives at the terminal market and then closes his previous sale for future delivery by buying back an equal quantity on the board of trade. One board of trade transaction thus cancels the other and the gain or loss balances approximately the loss or gain on the actual grain bought, shipped and sold, leaving the dealer his regular profit.

Defendant insists that by "hedging" in this manner the country grain buyer merely insures himself against loss from the fluctuations of the market, and that the practice is not only legitimate, but that a buyer of limited means could not safely do business without adopting it, and further insists that the transactions here in question were simply "hedging" transactions engaged in by Bolfing for the purpose of insuring himself against loss. For present purposes we shall assume without deciding that "hedging" transactions are lawful, and come directly to the question of whether the evidence so conclusively established that the option deals here involved were in fact "hedges" that we can say that the court erred in holding that they were illegal wagers on the future price of grain instead of finding that they were "hedges."

Defendant makes the claim that the indebtedness secured by the mortgage arose out of losses which Bolfing sustained in buying grain of low grade and poor quality at too high a price. This claim is not borne out by the record. It is true that he met with considerable losses by reason of such purchases, but his transactions in actual grain during the period here involved, taken as a whole, resulted in a substantial net profit. His transactions in options during this same period, taken as a whole, resulted in a net loss which considerably exceeded his profit on the actual grain, and it is reasonably certain that the indebtedness resulted from these losses in options. Of course it does not follow from the mere fact that losses resulted from these options that they were not "hedges." According to the theory, if the market advanced there would be a profit on the actual grain and a corresponding loss on the option taken as a "hedge."

The business year or season for dealing in grain apparently begins in July and extends to the following July. On or about July 1, 1916,

Bolfing and defendant made a complete settlement of the business of the preceding year, and Bolfing paid defendant in full the balance found due as the result of the transactions of that season. While the evidence would warrant a finding that Bolfing's deals in options in the latter part of that season were in part, at least, speculations, as distinguished from "hedges" and that defendant knew it, those transactions were settled and closed and did not enter into the consideration of the mortgage in controversy. The indebtedness secured by the mortgage grew out of transactions in the year which began with July, 1916.

Defendant's ledger account with Bolfing is one of the exhibits in the case, but most of the data from which it was posted is lacking. This account contains about 40 entries of amounts gained or lost on options between July 1, 1916, and the date of the mortgage. It seems to have been the custom when an option was bought back and closed to make out a statement on that date, showing whether the option was a purchase or a sale, its date, the quantity and price of the grain covered by the option, the quantity and price of the grain bought or sold to close it out and the amount of profit or loss made on the deal, but we find only three of these statements among the exhibits.

The first shows that on August 5, 1916, 4,000 bushels of September wheat were sold to close out two options previously bought and resulted in a profit of $638.44. The only entry in the account relating to these transactions is a credit to Bolfing on August 5 of $638.44 by 4,000 bushels of September wheat.

The second statement shows that on August 15, 1916, 10,000 bushels of September wheat were sold to close out three options previously bought and resulted in a profit of $746.06. The only entry in the account relating to these statements is a credit to Bolfing on August 15th of $746.06 by 10,000 bushels of September wheat.

The third statement shows that on April 20, 1917, 10,000 bushels of July wheat were bought to close out the following four options previously sold: 4,000 bushels sold January 16; 4,000 bushels sold January 20; 1,000 bushels sold February 17, and 1,000 bushels sold March 13; and further shows that on the same day, April 20, 10,000 bushels of September wheat were sold to close out the following three options previously bought: 7,000 bushels bought March 28; 2,000 bushels bought April

14, and 1,000 bushels bought April 17; and further shows that these several transactions resulted in a net loss of $3,961.25. The only entry in the account relating to these transactions is a charge against Bolfing on April 20 of $3,961.25 on 20,000 bushels of wheat.

From these statements, taken in connection with the other evidence, it appears that the entries in the account were made at the time the options were bought back and closed, and merely show the net gain or loss resulting from the transactions thus closed, without showing the original options, or whether the transactions had their origin in a purchase or a sale. Whether the transactions originated in a purchase or in a sale is important, for if they were "hedges" they should have originated in a sale. While defendant is doubtless correct in asserting that, under certain conditions, a "hedge" may properly originate in a purchase, it does not appear that such conditions existed in the present case. A laborious attempt to spell out the nature of the various transactions from defendant's letters, several hundred of which are in evidence, has disclosed that many of these transactions are not explained or accounted for in those letters.

The account shows that six transactions in options were closed out in July and August, 1916, and it is reasonably certain that these transactions were speculations as distinguished from "hedges," for Bolfing had just closed the previous year's business, had shipped no grain whatever in these two months, had bought little, if any, and the two transactions of which we have detailed statements originated in purchases and not in sales. The detailed statement of April 20, 1917, shows that the transactions in July wheat closed out on that date originated in sales, but that the transactions in September wheat originated in purchases. Defendant suggests that the options in September wheat may have been bought merely as a means of closing out the options in July wheat, that Bolfing instead of closing out his "hedge" by buying back July wheat may have bought September wheat to cover it, and that this is a common practice, where the price has changed so that a heavy loss would be sustained by closing out the "hedge" at the usual time and the price of later futures looks more favorable. It is difficult to see why one who indulges in this practice is not speculating rather than "hedging." Furthermore the facts shown by the statement do not accord with this theory, for 8,000 bushels of the July wheat were sold in January and none of the September wheat

was bought until March 28 long after any legitimate "hedge" made in January ought to have been closed out. It appears from the ledger account that during the months of January, February, March and April, 1917, 11 carloads of grain were shipped and options to the extent of 39,000 bushels were closed out. As the record shows that a car usually contained about 1,200 bushels and that Bolfing did not hold any considerable quantity of grain on hand, but made shipments promptly, the court could properly infer that at least a part of the above options were speculations.

The record also discloses that Bolfing sometimes gave an order for the purchase or sale of an option, and at the same time directed that it should be closed out whenever the market rose or fell a certain amount, and that he sometimes gave an order for the purchase or sale of an option at a specified price in case the market should rise or fall, as the case might be, to that point, and that defendant executed these orders. Such transactions indicate that Bolfing was speculating rather than "hedging."

As it was intended that these option deals should be settled by paying or receiving the amount of the rise or fall in the market price of the grain without the passing of any actual grain, they were clearly illegal, unless justifiable as "hedges." Defendant, having undertaken to justify them on that ground, had the burden of presenting the proof necessary to establish its contention. But, even if the burden were on the plaintiff to show that they were not "hedges," we are satisfied that the evidence is sufficient to sustain the findings, including the finding that defendant had knowledge of the nature of the transactions.

We find no reversible errors in the rulings admitting or excluding evidence, and the order appealed from is affirmed.