## J. C. DETERLING v. JACOB GEIB AND ANOTHER.[1]

June 15, 1934.

No. 29,738.

*Philip L. Scherer,* for appellant.
*George A.* and *C. H. MacKenzie* and *H. A. Knobel,* for respondents.

*JULIUS J. OLSON, Justice.*

Appeal from an order denying plaintiff's motion for a new trial after instructed verdict for defendants.

Plaintiff brought this action against defendants to recover damages upon the theory that they were his agents in purchasing certain wheat options. He claims that the defendants "falsely and fraudulently represented to the plaintiff herein that the price of said wheat was then and there the sum of $1.30 per bushel, whereas, in fact, the price of wheat was then and there the sum of $1.34½ per bushel and defendants further falsely and fraudulently represented to the plaintiff that they wanted to purchase said wheat for the reason that they had sold wheat short on the market and by the purchasing of this wheat from the plaintiff herein, the said defend-

[1]Reported in 255 N. W. 484.

ants could save a commission on said transaction; that all of said representations were false," etc. and that by reason thereof plaintiff was induced to sell his said option to his damage.

Defendants pleaded that they were engaged by plaintiff to acquire for him options for the purchase of 3,000 bushels of wheat but aver and allege that the transaction was a gambling transaction purely and that it was not intended nor contemplated by anyone connected with the case that any actual grain was to be delivered.

When the case had been fully tried and after both parties rested, each moved for an instructed verdict. Plaintiff's motion was denied; that of defendants granted. It was the theory of the trial court that the evidence conclusively established that the contract here involved was a gambling contract and as such void under 2 Mason Minn. St. 1927, § 10223-1. So the decisive question here to be determined is whether or not the record is such as to compel the view that the contract was of the kind which the statute prohibits.

There is practically no dispute about the facts. Plaintiff was engaged in the banking business, and, while he had some farm lands, his counsel freely admits that his client did not have wheat to sell nor was there any intention of actual purchase. The evidence further shows that these transactions commenced in February, 1929, at which time the defendants, at the instance and request of plaintiff, purchased a "May option" of 3,000 bushels of wheat at a margin of 10 cents per bushel, $300. The margin became depleted, and from time to time plaintiff was called upon and actually furnished additional funds with which to maintain a 10-cent margin on futures, i. e. options. On July 12 plaintiff, then being the holder of a 3,000-bushel option, talked with one of the defendants, and some mention was made that if the wheat would go up to $1.30 or thereabouts it might be well for plaintiff to "close out" his option. On the morning of July 13 one of defendants called up plaintiff and informed him that the opening of the market was between $1.29¾ and $1.31½. Plaintiff was told that defendants desired to purchase this option at $1.30 per bushel because they had some wheat that they wished to hedge. There is some dispute in the evidence in respect of this particular conversation, but in the view we take of

the case the difference in respect of the claim made by the parties is not important. At any rate, shortly after this conversation the defendants, at plaintiff's request, gave him a check for $700, that being the full amount plaintiff had deposited with them to protect his various options. Defendants also mailed him a check for $69.82, that being the final balance due him if the option was to be considered sold at $1.30 per bushel. Plaintiff refused to accept the last named check, but cashed the first. He claims that defendants treated him unfairly in that they misrepresented the price of wheat on July 13.

A careful review of the evidence indicates beyond question, and on the oral argument plaintiff's counsel admitted, that the transaction was purely a gambling transaction. In view of this fact, it is not deemed necessary further to discuss the case except to say that 2 Mason Minn. St. 1927, § 10223-1, was clearly violated. It reads as follows:

"Every contract of sale for future delivery of wheat, grain or other farm products wherein the actual delivery of the commodity sold is not, in good faith, contemplated or intended by the contracting parties, is hereby declared to be a gambling contract; is hereby made illegal and the parties thereto made liable to the penalties hereinafter provided.

"And every such contract is hereby declared to be *prima facie* a gambling contract when to the knowledge of the buyer the seller does not have in his possession, actually or potentially, the commodity sold."

Many cases have been before this court, but the following citations are deemed sufficient: Bolfing v. Schoener, 144 Minn. 425, 175 N. W. 901; Fraser v. Farmers Co-op. Co. 167 Minn. 369, 209 N. W. 33, 913; Askegaard v. Dalen, 93 Minn. 354, 101 N. W. 503; Mohr v. Miesen, 47 Minn. 228, 49 N. W. 862. An interesting and comprehensive note is found in 83 A. L. R. 522-607. See also, on unenforceability of illegal contracts, 2 Dunnell, Minn. Dig. (2 ed. & Supp.) §§ 1885, 1887; Johnstown Land Co. v. Brainerd Brg. Co. 142 Minn. 291, 172 N. W. 211.

Order affirmed.