E. C. FISH, Appellant, v. E. C. WHITE et al., Appellees.

CORPORATIONS: Transfer of Shares—Stock Issued for Other Than
1 Money—Violation of Statute—Fraud—Rescission. The sale, by the original incorporators, of corporate shares of stock which have been issued for property *other than money*, to one ignorant of such fact, is of itself a representation that such shares were issued:

(1) Only after due application had been made to the executive council for permission to so issue;

(2) Only after due appraisement of such property by said council;

(3) Only after the said council had authorized said issuance; and

(4) Only in the amount so authorized.

Section 1641-b, Code Supplement, 1913. And if such representation be false, a rescission of the sale may be had.

CORPORATIONS: Shares of Stock—Issuance for Property Other
2 Than Money—Conditions. Stock issues to the amount of the money invested *in a partnership* whose general assets were turned over to the corporation are unauthorized, without obtaining the consent of the executive council to such issue after

due application to and appraisement by such council. Section 1641-b, Code Supplement, 1913.

**CORPORATIONS:** Shares of Stock—Full Payment to Corporation
3 —Burden of Proof. One contending that shares of stock were issued only after full payment in money or its full equivalent to the corporation has the burden to so show.

**CORPORATIONS:** Transfer of Shares—Sales—Fraud—Evidence.
4 Evidence reviewed, with reference to alleged false representation concerning the financial condition of a corporation and attending a sale of stock, and held to present a jury question.

*Appeal from Polk District Court.*—W. H. McHENRY, Judge.

TUESDAY, MAY 22, 1917.

REHEARING DENIED MONDAY, SEPTEMBER 24, 1917.

ACTION at law to recover damages alleged to have been occasioned by the fraud and deceit of the defendants in the sale to plaintiff of certain shares of corporate stock. There was a directed verdict and judgment for defendants, and plaintiff appeals.—*Reversed and remanded.*

*J. G. Myerly,* for appellant.

*W. L. Ryan,* for appellees.

WEAVER, J.—The defendants are mother and son. Prior to the dealings between them and the plaintiff which are the subject of this controversy, the son, A. C. White, entered into partnership with one Cline for the manufacture and sale of ice cream cones. Cline, who claimed to have invented a machine for the making of the cones, undertook on his part to secure a patent for his invention, which, when issued, was to become the property of the partnership, together with all the tools, auxiliaries and furniture; also to build and complete four additional machines. White undertook

1. CORPORATIONS: transfer of shares: stock issued for other than money: violation of statute: fraud: rescission.

on his part to furnish $5,000 in money, payable $2,500 down and an equal share at a later date. The money to meet this obligation on White's part was apparently furnished or advanced by his mother, who seems thereafter to have had an active hand in the management of the business. A year or more after the formation of the partnership, the business was incorporated under the name of the Ameri-Cone Company. The limit of authorized capital is not stated, but shares of stock to the amount of $15,000 were issued as follows: 50 shares, or $5,000 par value, to Cline for his rights as inventor of the machine and for the machinery, tools and property furnished by him; a like amount to A. C. White to cover the amount he had contributed to the partnership; and the remainder to E. C. White to cover the amount of other money she had contributed to the business. Whether this money was advanced by her before or after the incorporation is by no means clear, the evidence being such that a jury might easily find either way upon the question. Mrs. White says the money went into the new machine and running expenses. She further says that a good share of it was expended in experimenting and in salaries. It should be said here that, beginning at a time not clearly shown, Cline began the construction of a new and larger machine, and that the necessary cash expense of it was supplied by the Whites, and this is the machine to which the witness refers. No money was in fact paid into the company treasury when the stock was issued, nor was any appraisement of the property and assets taken for the stock made by or for the state executive council, nor any application made to said council for leave to issue paid-up shares of stock therefor, as the statute requires. See Code Supplement, 1913, Section 1641-b. Before the corporate business had proceeded very far, differences arose between Cline and the Whites, which ended in his withdrawal from the concern, taking out with him the

new machine and returning his 50 shares of stock. No pat-
ent has ever been issued upon these machines, but an appli-
cation therefor was pending at the time of the trial below.
The incorporation was had in the early part of the year
1914. In the summer of that year, the plaintiff, a former
intimate friend of the Whites', then residing in Oregon,
came to Des Moines, and while there, learned something
about the enterprise in which the Whites were engaged.
After plaintiff's return to Oregon, there was some corre-
spondence between him and A. C. White, in the course of
which plaintiff suggested an inclination on his part to buy
one of the cone-making machines and attempt to build up
a business in the west. This developed into negotiations
looking to the return of the plaintiff to Des Moines and the
purchase by him of an interest in the Ameri-Cone Company.
An indefinite and more or less tentative arrangement was
agreed upon, and plaintiff returned. He says that, when he
first met defendants at this time, they showed him the com-
pany's books and records, together with a statement show-
ing the assets of the company, over and above liabilities, to
be over $13,000. In a letter previously written him by
A. C. White, it was stated that they had "baked over five
million cones this year and could have baked more had we
not put in our time building the new machine." He also
said, "Now if you want to go into the cone business, I
would like to have you for a partner, and I know that we
would work together so that we would both get rich." In
their interview after plaintiff's return, the evidence re-
veals very little in the way of definite or specific repre-
sentations of fact by the defendants, but it is reasonably
clear that they impressed plaintiff with the belief that the
company was financially sound, with a promising business
and a favorable outlook for the future. The result was
that plaintiff took 3 shares of the stock, paying therefor
$300, and very shortly afterwards he took and paid for 9

other shares at the same rate. At this time, the defendants were respectively president and secretary of the company. The certificate for the first 3 shares was delivered to him, and the certificate for the remainder was made out, but left in the company's stock book, from which plaintiff did not remove it, though he had the opportunity. A few months' experience led plaintiff to the conclusion that the business was a failure, and that the stock which he had purchased was of little value, and, claiming that he had been deceived by the defendants, he withdrew from the concern and brought this action to recover damages, tendering a return of the stock issued to him. The defendants deny all allegations of fraud and deceit, and allege that plaintiff bought the stock with full knowledge and notice of the facts concerning its issuance and the actual condition of the business. At the close of the trial, the defendants moved for a directed verdict in their favor, on the ground that the evidence was insufficient as a matter of law to sustain a verdict for the plaintiff. The court adopted this view, and verdict and judgment were entered accordingly.

Did the trial court err in holding as a matter of law that there had been an entire failure of proof on plaintiff's part? We think this must be answered in the affirmative. We reach this conclusion on the following grounds:

I. It appears without dispute that the 2. CORPORATIONS: shares of stock were issued without authorshares of stock: issuance for ity. The offer of such stock for sale was in property other than money: itself a false representation that the shares conditions. had been issued in accordance with law and that the amount thereof had been, in good faith, paid into the company's treasury. *Sykes v. Pure Food Cider Co.*, 157 Iowa 601. That such representation was untrue is not denied. The fact, if it be a fact, that the defendants put an amount of money equal to the par value of the stock into the original partnership or partnership

business is no answer to the proposition that the stock was issued without authority. What the partnership turned over to the corporation was not the money which the partners had invested, but the property for which that money or a part thereof had been expended. Indeed, so far as Cline's stock was concerned, he does not appear to have paid a dollar, except in the form of a more or less nebulous prospect of a patent not yet granted, and his labor (the amount and value, of which is not shown) in the construction of the baking machines. The property turned in as payment for the defendants' stock may have been worth what the defendants had put into it and what they had paid for "experiments," "salaries" and running expenses; but, if ordinary human observation and experience be any criterion, it was worth much less. But in any event, the burden of proving that the stock issued represents full payment therefor—not to the partnership but to the corporation—in money or its full equivalent, was upon the defendants. The only answer made by counsel to this ground of complaint is that, whatever be the truth in this respect, the facts were known to the plaintiff at the time he purchased the stock. This, however, is not conceded by the plaintiff, nor is it conclusively proved. If plaintiff's contention at this point be true, it was his undoubted right to tender a return of the stock and demand repayment of the purchase money, and this would be none the less true though the corporation as he found it was entirely solvent and held property equal to or in excess of all its liabilities, including its capital stock. We regard it as very clear that upon this issue defendants were not entitled to a directed verdict.

3. CORPORATIONS: shares of stock: full payment to corporation: burden of proof.

II.   Upon the other question of false

**4. Corporations: transfer of shares: sales: fraud: evidence.** representations concerning the business and financial condition of the company, the case for the plaintiff is much less clear, but it is not without evidence in its support.

For example, in a letter by A. C. White stating his desire to have plaintiff come into the business, he stated, as we have already quoted, that the company had baked over 5,000,000 cones and could have turned out more, but for the time which had been spent in building the new machine. This the plaintiff could rightfully regard as a representation of the amount of business done by the company in the first year of its existence, but Mrs. White testified on the trial that the cones sold were "perhaps a couple of thousand." The selling price of cones, as stated in the abstract, was $3.50 per thousand. At this rate, a production of 5,000,000 cones would indicate a business of $17,500, as against the wholly negligible amount of $7 in actual sales. Plaintiff also testified that defendants represented to him that the stock was selling at par, while we think it a fair inference from the entire record that none of the stock had ever been sold at any price. It is true that defendants claim, and there is evidence tending to show, that they submitted to plaintiff their books and made full disclosure to him of the condition of the company and its business. To some extent these claims are admitted by plaintiff, but his admissions are not so broad as to take this issue from the jury.

What we have said sufficiently indicates that the motion for a directed verdict in defendants' favor should have been denied. For the error in sustaining the motion, the judgment below is reversed and the cause will be remanded to the district court for a new trial.—*Reversed and remanded.*

Gaynor, C. J., Preston and Stevens, JJ., concur.