## JOHNSTOWN LAND COMPANY v. BRAINERD BREWING COMPANY AND OTHERS.[1]

### May 2, 1919.

### No. 21,151.

**Intoxicating liquor — Indian country.**

1. One undertaking to act for plaintiff loaned money to defendant to be used in the purchase of a saloon in territory covered by the Chippewa Indian treaty of May 22, 1855, and made the continued operation of the saloon and the sale of certain kinds of beer there, a condition to the loan. The purchase was made and the specified kinds of beer sold.

**Same — prohibitory clause of Chippewa treaty valid.**

2. The prohibitory clause of the Chippewa Indian treaty of May 22, 1855, is valid.

**Same — contract to violate treaty invalid.**

3. The treaty forbids the introduction of intoxicating liquor into this territory. Any contract in furtherance of a purpose to violate it is void.

**Money had and received — no recovery where aid is given to unlawful purpose.**

4. Where money is borrowed with intent on the part of the borrower

[1]Reported in 172 N. W. 211.

to use it for an unlawful purpose, mere knowledge of the lender of such purpose will not bar his recovery of his loan, but, if the lender actively aids the borrower in carrying out the unlawful purpose, the transaction is illegal and the lender cannot recover.

**Same — transaction void.**

> 5. An agent of a brewing company, who sometimes acted also as plaintiff's agent and who assumed to do so in this transaction, was an active participant in the plan to introduce beer into this prohibited territory. Plaintiff accepted the contract that he made and took it with all its infirmities. The whole transaction was void.

Action in the district court for Crow Wing county to recover $5,000 on a promissory note. The separate answer of defendant corporation and of Werner Hemstead alleged that the note sued upon was made and delivered to plaintiff as part of the purchase price of a certain stock of intoxicating liquors and the good will of a saloon business then being conducted at Julesburg, the same together with the city of Brainerd, where the note was made, being within the exterior boundaries of the territory ceded to the United States by the Chippewa Treaty of February 22, 1855, the stock of liquors having been introduced into said ceded territory in violation of said treaty and said note was made and delivered to plaintiff as part consideration of plaintiff agreeing with defendants to introduce or cause to be introduced other large amounts of intoxicating liquors into said territory for the purpose of furnishing said saloon with liquor for retail in said territory. The case was tried before McClenahan, J., who at the close of the testimony granted plaintiff's motion for a directed verdict. From an order granting defendant's motion for a new trial, plaintiff appealed. Affirmed.

*P. C. Schmidt,* for appellant.

*M. E. Ryan,* for respondents.

HALLAM, J.

Julesburg, Crow Wing county, is in territory covered by the Chippewa Indian treaty of May 22, 1855, which forbids the introduction of intoxicating liquor into certain "Indian country." In June, 1913, Jule Jamieson owned a saloon at Julesburg which he was operating in contravention of the treaty. Jamieson was willing to dispose of his saloon, including

its stock of liquors, for $10,000. The defendant Brainerd Brewing Company was selling beer to Jamieson, so was the Fitger Brewing Company of Duluth. Colonel Schall was office manager of the Fitger Company, and, in connection with his duties as such, also looked after some deals for plaintiff. Defendants Hemstead and Boppel were officers of the Brainerd Brewing Company. In 1913 Schall approached defendants with this proposition: "You fellows go ahead and buy this Julesburg property and we will finance it and you will make money enough out of it to pay for the whole proposition in two years. * * * I will furnish you part of the money, and the conditions are that we are to split the business in the Julesburg location there, meaning Brainerd beer and Fitger beer." Defendant accepted this proposition, the purchase was made, the property taken over in the names of Hemstead and Boppel. They gave a mortgage of $5,000 to Jamieson. Plaintiff furnished to defendant the other $5,000, the amount which Schall agreed to furnish, and defendants turned it over to Jamieson. Defendants gave the note sued on for the amount so advanced to them. When the parties closed the transaction Schall had a note running to plaintiff already prepared. In explanation, Schall said: "This is our form of handling this proposition. Instead of giving a note to the Fitger Brewing Company it is made out to the Johnstown Land Company." After the purchase, the beer business was "split" as originally proposed. The exact relation between the Fitger Company and plaintiff does not appear, but counsel for the plaintiff was assistant secretary of both companies, as well as their attorney. At the close of the testimony the court directed a verdict for plaintiff. Defendant moved for judgment or a new trial. The court, conceiving that it was error to take the case from the jury, granted a new trial.

2. The validity of the prohibitory clause of the treaty of 1855 is assailed. This is clearly a Federal question. The Supreme Court of the United States has held that the prohibitions contained in this clause of the treaty are operative. Johnson v. Gearlds, 234 U. S. 422, 34 Sup. Ct. 794, 58 L. ed. 1383; John Gund Brewing Co. v. Great Northern Ry. Co. 246 U. S. 651, 38 Sup. Ct. 333, 62 L. ed. 921. We follow those decisions and so hold. The contention of the plaintiff that the court in those cases considered only the question whether or not the treaty

had become obsolete we cannot sustain.

3. The treaty in effect forbids the introduction of intoxicating liquor into this territory under penalty. The introduction of the Fitger Company's beer and of Brainerd Brewing Company's beer into this territory was contrary to the terms of this treaty. Any contract in furtherance of the introduction of any beer into this territory was unlawful.

4. Plaintiff claims that it was simply a lender of money and that it was in no sense a participant in the transaction for which the money was to be used. In our opinion this contention cannot be sustained.

It is well settled law applicable to cases of sales, that mere knowledge by a vendor of an intent on the part of the vendee to use the goods for an unlawful purpose will not bar a recovery by the vendor on the contract of sale, but, if the vendor in any way aids the vendee in his unlawful design to violate the law, such participation will render void the contract of sale and will bar recovery by the vendor. The participation must be to some extent active. The vendor must do something in furtherance of the vendee's unlawful design. Anheuser-Busch Brewing Assn. v. Mason, 44 Minn. 318, 46 N. W. 558, 9 L.R.A. 506, 20 Am. St. 580; Hanauer v. Doane, 12 Wall. 342, 20 L. ed. 439. By parity reasoning, it must be held that, when money is borrowed with intent on the part of the borrower to use it for an unlawful purpose, mere knowledge by the lender of such purpose will not bar his recovery of the amount loaned, but, if the lender participates in the unlawful design or actively aids the borrower in carrying it out, the whole transaction is illegal, and the lender cannot recover the money loaned. Hanover Nat. Bank v. First Nat. Bank, 109 Fed. 421, 48 C. C. A. 482; Merchants Bank of New York v. Spalding, 9 N. Y. 53; Johnson v. McMillon, 178 Ky. 707, 199 S. W. 1070, L.R.A. 1918C, 244.

5. The question in this case is, then, was plaintiff, in this transaction, a participant in the plan or design to introduce beer into this prohibited territory. Unquestionably Colonel Schall was an active participant in such plan. The sole purpose of the negotiation which he conducted was the purchase and the continued unlawful operation of a saloon and the sale of intoxicating liquors in prohibited territory. The purpose of the loan which he negotiated was to finance this unlawful project, and to make certain the carrying out of this purpose he made it one of the con-

ditions of the loan that beer—Fitger beer—should be introduced and sold. Plaintiff is in no better position than Schall would have been had he himself made the loan. His relation in general to plaintiff is not important. In this transaction, he and he alone acted for plaintiff throughout. Pursuant to his negotiations, plaintiff advanced the money and accepted therefor the note which he took and which it is now seeking to enforce. Plaintiff accepted the contract that he made. It takes it with all the infirmities with which he burdened it. Upon the uncontroverted evidence the whole transaction was void.

The court properly vacated its order for a directed verdict. Defendants have not appealed so we are not confronted with the question whether the court should have directed judgment for defendant instead of granting a new trial. Affirmed.