## W. D. EDSON v. C. J. O'CONNELL AND OTHERS.[1]

January 12, 1934.

No. 29,568.

*John C. Holten,* for appellants.
*Leo A. Ball,* for respondent.

*HOLT, Justice.*

Action on a $6,000 promissory note, tried to the court and findings in favor of plaintiff. The appeal is by defendants Johnson and

[1]Reported in 252 N. W. 217.

O'Connell from the order denying them a new trial. Three of defendants made no defense.

Two questions are presented by appellants:

(a)   Was the note procured by misrepresentation or fraud?

(b)   Was plaintiff violating the blue sky law in the transaction leading up to the execution of the note?

The court found that the note was given for a good and sufficient consideration and that attached thereto and as collateral security for the payment thereof were three stock certificates of the Rigna Company, a Minnesota corporation, issued to certain defendants and indorsed by them; that plaintiff made no false or fraudulent representations to defendants or any of them as inducements to execute the note; that two of defendants had paid on the note $1,236 each; and as conclusion of law that plaintiff recover of defendants $3,708.

To understand the situation out of which the theory of the defense arises this short statement may suffice. In the spring of 1930 the Royce Company, a corporation, licensed to sell its stock in this state, held a lease on an 80-acre tract of land in Oklahoma whereon a promising oil well had just been drilled. Plaintiff, as well as defendants, was a stockholder and greatly interested in the prospect. Plaintiff and all the defendants except Johnson were also stockholders of the Rigna Company, a Minnesota corporation, which had leased 80 acres next to the Royce Company's 80. It had two gas wells on its property. The stockholders of both companies greatly desired that a third well be drilled on the Rigna 80 to a depth reaching the same oil-bearing sand strata that yielded oil on the Royce 80; in fact, it was thought imperative to do so. The Rigna Company had not obtained license to sell its stock in this state. It needed funds to drill this third well. Plaintiff loaned it $15,000. In addition to this amount and the funds on hand, the board of directors concluded that $4,000 more was required to drill the well and discharge existing debts. The appellants were solicited to purchase stock and were informed that plaintiff would loan them the money needed for the purchase. And on July 17, 1930, they

bought 400 shares of treasury stock of the Rigna Company and raised the money to pay therefor by borrowing from plaintiff $4,000, for which they gave their promissory note secured by the said shares of stock, which they assigned and delivered to plaintiff with the note. Shortly thereafter it was discovered that the company needed additional money, and three other shareholders agreed to buy some additional stock. An arrangement was made with these latter and appellants, plaintiff consenting, that the $4,000 note should be surrendered, and, in lieu thereof, a promissory note of $6,000 should be executed to plaintiff by the five defendants, upon which plaintiff should loan $2,000 in addition to the $4,000 loaned upon the surrendered note. For the $2,000 so loaned defendants bought 200 additional shares of treasury stock, and among defendants it was agreed that each should own and hold 120 shares of the 600 shares of stock issued. This plan was carried out; plaintiff loaned $2,000 additional; the $4,000 note was surrendered and all five defendants executed to plaintiff the note in suit; and the additional stock was issued and assigned to plaintiff as collateral security to the note. Needless to say, neither the Royce nor the Rigna deep well proved profitable in spite of the fact that the latter was drilled deeper and at a higher cost than anticipated.

The findings, above summarized, are challenged by the appeal. We are satisfied that the learned trial court's finding that plaintiff was guilty of no fraud or misrepresentation inducing the execution of the note is well sustained. One of appellants, O'Connell, was already a stockholder of the Rigna Company. The other appellant, Johnson, was in close contact with O'Connell, and both were interested actively in the Royce Company and acquainted with the Rigna Company prospects. And we think the evidence does not compel a finding that appellants were induced to buy stock in the Rigna Company by any fraud or misrepresentation of plaintiff or of any other party. In borrowing the money and executing the note in suit, as well as in using the money so procured to purchase the shares of stock, appellants acted on their own judgment and were not induced so to do by any deceit or fraud of any person.

The fact that the blue sky law of this state was violated in the sale of the 600 shares of stock of the Rigna Company affords appellants the chief argument on this appeal, the sections violated being 1 Mason Minn. St. 1927, §§ 3996-4 and 3996-22. There was no license granted the Rigna Company to sell its stock in this state. Plaintiff, its president, and its other officers must be held to have knowledge of that fact. And it is clear that both the loan of the money and the sale of the 600 shares of stock were consummated at Duluth. It is true that the sale of this stock was illegal and prohibited by said § 3996-22. Drees v. Minnesota P. Co. 189 Minn. 608, 250 N. W. 563; Webster v. U. S. I. Realty Co. 170 Minn. 360, 212 N. W. 806; Vercellini v. U. S. I. Realty Co. 158 Minn. 72, 196 N. W. 672. But in the cases cited it is held that the purchaser does not violate the section mentioned or any other provision of the blue sky law; hence he is not *in pari delicto* with the seller and may appeal to the law for relief. It follows that the purchaser of stock obtains a good title, and the sale is not as to him void, but voidable. Appellants have made no efforts to recover from the Rigna Company the consideration paid. Had the expectations of all parties concerned been realized by an abundant yield of oil from the well drilled, appellants would without doubt have insisted on the ownership of the stock purchased, and, we think, lawfully so. But it is claimed that the sale of the stock is so intimately connected with the loan of the money as to taint the note with illegality. Johnstown Land Co. v. Brainerd Brg. Co. 142 Minn. 291, 172 N. W. 211, 212, is relied on by appellants. It is to be noted that the chief aim of all parties concerned in that litigation was to introduce the sale of liquor in prohibited territory, and the note there in suit was executed to further such plan. All the parties involved, the lender included, were *in pari delicto*. Therein the court said [142 Minn. 294]:

"By parity reasoning, it must be held that, when money is borrowed with intent on the part of the borrower to use it for an unlawful purpose, mere knowledge of the lender of such purpose will not bar his recovery of the amount loaned, but, if the lender participates in the unlawful design or actively aids the borrower in

carrying it out, the whole transaction is illegal, and the lender cannot recover the money loaned."

In the instant case the borrowers could have no unlawful purpose in view in the use of the money; it was not unlawful or criminal for them to buy this stock even though the Rigna Company violated the law in selling it. They acquired a good title to the stock. They probably could transfer a good title under 1 Mason Minn. St. 1927, § 3996-3, subd. (1). Such transferee could not sue the corporation to recover what the corporation received on the sale, even though the transferor could have done so without first offering to rescind or return the stock, as held in the Drees case, 189 Minn. 608, 250 N. W. 563. We have held that where the rights of creditors have intervened, the purchasers of stock sold in violation of the blue sky law could not rescind or recover what was paid for it. Parker v. Merritt, 164 Minn. 305, 204 N. W. 941; Marin v. Olson, 181 Minn. 327, 232 N. W. 523. We think the trial court could well conclude that in so far as the purchase of the stock was concerned the deal was between the Rigna Company and appellants, in which deal appellants and their codefendants violated no law in the purchase of the stock; and that in so far as the loan was concerned the deal was between plaintiff and defendants, and, the borrowers' purpose to use the money for the purchase of this stock being lawful, the note in suit given for the loan was not tainted. And this is so even though it be manifest that the purchase could not have been made unless this or some other loan could have been procured by defendants. It is entirely clear that had plaintiff been wholly disconnected with the Rigna Company appellants could have had no defense in the fact that the company violated the blue sky law when it sold them the stock.

In our opinion the findings are sustained and justify the decision. The order is affirmed.