MARY BURZINSKI v. KINYON INVESTMENT COMPANY
AND ANOTHER.[1]

August 10, 1934.

No. 29,987.

[1]Reported in 256 N. W. 233.

*H. H. Sturner* and *Moonan & Moonan,* for appellant.
*Nelson & Nelson,* for respondents.

*HOLT, Justice.*

The appeal is from a judgment in favor of defendants.

There were six cases tried together, but separate findings and judgments were entered. The difference in the cases is merely in dates and in the amount of money involved. The defendants in each case are the Kinyon Investment Company and The First National Bank of Owatonna. The officers of the company are also

officers of the bank. Each corporation conducts its business in the banking rooms or offices of the bank. The bank had no interest in the mortgage here involved when it was given, nor did it take any part in disposing of the participation certificates or receive any commission or other benefit from any transaction growing out of the mortgage referred to. It subsequently was intrusted with the documents for safe-keeping. No reference need hereinafter be made to the bank, for there is nothing in the assignments of error that would justify findings holding it liable to any one of the plaintiffs.

Harlan E. Leach owned a 240-acre farm in Steele county, this state, when, on September 1, 1923, he, his wife joining, executed a mortgage thereon to the Kinyon Investment Company to secure the payment of one promissory note for $12,000 due in five years, bearing interest at the rate of 5½ per cent annually, and one note of $2,000 on the same terms. The record shows that Mr. Leach applied to the company for a loan of $14,000, but that it refused to lend more than $12,000. He and one Mrs. Edmonds had formerly owned the farm, and Leach had bought her interest therein. Other jointly owned property figured in the deal. However, Mr. Leach owed her $2,000 which he desired to pay or adjust. So when the company would lend only $12,000 on the farm it was arranged that a note to Mrs. Edmonds might be included in the mortgage, provided it was subject and subordinate to the $12,000 note. The transaction was closed accordingly. The two notes were executed to the company and the mortgage securing them for $14,000. The company paid over to Leach $12,000, and indorsed, without recourse, the $2,000 note and delivered the same to Mrs. Edmonds with this agreement signed by it attached:

"September 1, 1923.

"We hereby certify that the attached note of $2,000 is one of those mentioned in and secured by a first mortgage of $14,000 bearing even date herewith and executed by Harlan E. Leach and Eva G. Leach, his wife, covering the SE¼ section 21 and the W½ of the SW¼ section 22-106-21.

"We agree to issue no satisfaction of said mortgage until the attached note is paid in full and in the event that foreclosure be-

comes necessary the holder of said note shall have the right to include any unpaid balance on same in the amount due at the foreclosure sale. If there should be no redemption by the owner of the land or any subsequent lienholder, the owner of the attached note shall be entitled to an assignment of the sheriff's certificate at his or her option upon payment of the amount due on the other note of $12,000 secured by said mortgage plus the foreclosure expenses. Failure to exercise this option shall be deemed a forfeiture of any interest in said sheriff's certificate."

The mortgage was duly recorded. Thereafter, and between September 13, 1923, and March 1, 1924, the company sold to the several plaintiffs, and to others, shares or interest in the $12,000 note and mortgage securing it. To each purchaser the company delivered an instrument, called a First Mortgage Loan Participation Certificate, selling and transferring a proportionate share in the "First Mortgage Loan" of $12,000, giving a description of the mortgage and the book and page of its record. Appended was a receipt signed by the bank that it held the papers in the Leach loan of $12,000 for safekeeping and containing this guaranty:

"This bank further guarantees that the total amount of Participation Certificates outstanding, bearing its receipt for the above described papers, shall not exceed the sum of $12,000."

Thereupon for two years the interest was paid on the $12,000 note, and the holders of the participation certificates received their share. Then there was default in the payment of both interest and taxes. The company, after advising with the certificate holders, foreclosed the mortgage, and on January 26, 1927, bid in the farm for the benefit of plaintiff and the other certificate holders for the full amount due on both notes, including expenses of sale and delinquent taxes paid by the company. There was no redemption, nor did Mrs. Edmonds exercise the option given by the agreement when the $2,000 note was delivered to her. In fact, the court found she filed an affidavit in the register of deeds office from which it appears that her interest in and to the mortgage and farm wholly expired before the commencement of this action.

Plaintiff makes three headings or groups under which the assignments of error are discussed. While assignments numbered 7, 8, and 9 challenge certain findings, there is no argument questioning any of them, and any attack thereon must be deemed abandoned. The first group of errors which we take up relates to the findings that, in substance, the company was guilty of no misrepresentation or fraud respecting the security in the sale of the participation certificate to plaintiff. We think the court had ample evidence for such findings. Farm values were higher in 1923 and 1924 than now. The farm was within 12 miles of Owatonna. One of the chief officers of the company made a full inspection of the farm in connection with the application and representations Mr. Leach had made for the loan. The company loaned $12,000 of its own money upon the security of the farm. No doubt the farm at that time would have been considered good security for that amount by all conservative investors. Mr. Leach, an attorney of high professional standing, stated in his application for the loan that there were 120 acres under cultivation and that 140 acres were tillable; that the soil was 12 inches deep black loam with gravel subsoil. The court could well conclude that this statement was exhibited to plaintiff. A partly printed and typed description of the farm issued by the company was also shown or furnished plaintiff. No doubt the company recommended to plaintiff the participation certificate as a safe and desirable investment secured by a $12,000 first mortgage on this 240-acre farm. To be sure, all was not overlaid by a 12-inch loam. On knolls the gravel came to the surface. There were some boulders on parts of what was called pasture and meadow and some wet spots. But as 240-acre farms go in undulating territory the court was justified in finding that there was no fraud or substantial misrepresentation as to its character in selling plaintiff the participation certificate. The court could properly conclude that it was a fair farm and practically as it was represented. The conflict in the evidence was for the judgment of the trial court.

The main contention of plaintiff for a reversal of the judgment is that as a matter of law upon the undisputed facts the mortgage was not a $12,000 first mortgage as represented, but a $14,000

mortgage; that, even if it be conceded that the $12,000 note takes precedence, the owner of the farm could not pay that note and obtain satisfaction of the mortgage; and that further subsequent lienholders would be less inclined to redeem from a $14,000 mortgage foreclosure sale than from one of $12,000. The court found that the $2,000 note was the property of Mrs. Edmonds when executed and was included in the mortgage with the understanding and agreement, between the company and Mrs. Edmonds, that such note should be considered subsequent to the $12,000 note owned and held by the company, and that, in case of foreclosure of the mortgage securing said notes, the $12,000 note should be a prior lien and that the owner of the $2,000 note should have the right to have the amount due thereon included in the foreclosure proceeding and should have an option to pay off the $12,000 note with interest and foreclosure expenses and become the owner of the sheriff's certificate, and if said option was not exercised the owner of the $2,000 note should have no interest or title in the property. The evidence supports this finding, and there can be no doubt that as between Leach and the company and Mrs. Edmonds the $12,000 note was a first lien and prior to that of the $2,000 note. No purchaser of the latter from Mrs. Edmonds could ever claim any rights, as an innocent holder for value thereof, in the mortgage securing it other than such rights as Mrs. Edmonds personally could assert. So in legal effect the $12,000 note was secured by a first mortgage in that amount on the farm. But assume for the purposes of this decision that there was a sufficient variance in the description of the security as a $12,000 first mortgage and as it reads to justify rescission under the rule of Pennington v. Roberge, 122 Minn. 295, 142 N. W. 710; Fawkes v. Knapp, 138 Minn. 384, 165 N. W. 236; Saupe v. St. Paul Trust Co. 170 Minn. 366, 212 N. W. 892; Magnuson v. Bouck, 178 Minn. 238, 226 N. W. 702; still we think plaintiff's laches and conduct have been such as to warrant denial of the relief. An action for rescission for fraud must be brought promptly after discovering the fraud. Unreasonable delay or laches defeats recovery. Especially is this so where defendant by plaintiff's conduct has been led to expend time and money on the assumption

that plaintiff regarded the transaction as valid and not subject to be disturbed. These participation certificates were bought by the several plaintiffs not later than March, 1924. This action was brought in 1931. The certificates gave the page and book where the mortgage was recorded. It would be reasonable to expect that, at least when default occurred, the parties would examine the mortgage. The purchasers were or had been residents of Steele county, where the mortgaged land was, and the record mentioned could be found. They were informed of the default, the foreclosure, and the subsequent handling of the farm. They apparently acquiesced in what the company did in regard thereto until shortly before the action was brought. There had been such long delay after plaintiff knew, or as a reasonably prudent person ought to have ascertained, the terms and conditions of the mortgage, during which delay the company, to plaintiff's knowledge, was devoting time and advancing money to make the foreclosure, pay taxes, and manage the farm after redemption expired, that the company had good ground for the belief that all it did in behalf of the holders of the $12,000 note was approved and ratified; hence the court was well justified in denying rescission. One seeking that remedy must act with reasonable promptness. Marshall v. Gilman, 47 Minn. 131, 49 N. W. 688; McQueen v. Burhans, 77 Minn. 382, 80 N. W. 201.

Plaintiff also claimed the right to rescind and recover the money paid on the ground that the participation certificate was sold in violation of the blue sky law (G. S. 1923, §§ 3977-4000) being the law in force when the sale was made. On this issue the court found:

"That the $12,000 note in which said participation was issued, and which note was secured by said mortgage, was not more than seventy (70%) per cent of the fair value of said property mortgaged.

"That the cause of action alleged in said complaint, if any, as to the sale of said participation certificate in violation of the laws of the state of Minnesota relative to the sale of securities and without registration of the same with the state securities commission, did not accrue within six years before the commencement of this action and is barred by the statute of limitations."

The evidence sustains both findings. The first removes this mortgage from the operation of the act, G. S. 1923, § 3978(g), and the last disposes of the action even though the mortgage came under the act. The cause of action based on the violation of G. S. 1923, §§ 3977-4000, accrued when the sale was made. Olesen v. Retzlaff, 184 Minn. 624, 238 N. W. 12, 239 N. W. 672, 78 A. L. R. 891.

The judgment is affirmed.