## STERN v. NATIONAL CITY CO.

District Court, D. Minnesota, Fourth Division.

Nov. 4, 1938.

Leonard, Street & Deinard, of Minneapolis, Minn., for plaintiff.

Doherty, Rumble, Butler, Sullivan & Mitchell, of St. Paul, Minn., and Walter K. Earle, of Shearman & Sterling, of New York City, for defendant.

JOYCE, District Judge.

Plaintiff's complaint sets forth four causes of action involving certain sales made by defendant to plaintiff of shares of The National City Bank of New York, in the amounts and on the dates as follows:

Feb. 4, 1929, 5 shares, total purchase price $1,640.

Apr. 4, 1929, 5 shares, total purchase price $1,960.

July 12, 1929, 5 shares, total purchase price $2,035.

Oct. 16, 1929, 5 shares, total purchase price $2,875.

The stock of the National City Bank so purchased carried with it a certain beneficial interest in the stock of the defendant, and the stock which was the subject of the last two purchases also carried with it a beneficial interest in the stock of City Bank Farmers Trust Company. The beneficial interest in the stock of the defendant was the result of an agreement made under date of June 1, 1911, pursuant to which all of the stock of the defendant was issued and delivered to three trustees for the benefit of the stockholders of The National City Bank, and the beneficial interest in the stock of City Bank Farmers Trust Company was the result of an agreement made under date of June 29, 1929, pursuant to which all of the stock of City Bank Farmers Trust Company was transferred to three trustees likewise for the benefit of the stockholders of the National City Bank. From the time of acquisition of legal ownership of the stock of each of the corporations by the trustees mentioned a ratable beneficial interest therein was an incident to ownership of stock of the Bank and passed with sale and transfer of the Bank's stock, but was not otherwise subject to ownership, transfer or sale. These beneficial interests were evidenced by certificates of the trustees endorsed and signed on the reverse side of the certificates evidencing the Bank shares.

The defendant company was licensed as a foreign corporation in Minnesota on March 31, 1917, and so continued until August 23, 1934, when it formally withdrew from the state. In August, 1917, the defendant sought and obtained a dealer's license under the Minnesota Securities law, which was renewed annually until June, 1934, when defendant obtained a cancellation of its dealer's license as well as all licenses issued to agents which were then outstanding. After the defendant had obtained the requisite authority to carry on business in Minnesota in connection with the sale of securities, it opened an office in the Builders Exchange Building in Minneapolis, started a bank account, had a cashier, installed a private wire connection with its main office in New York through Chicago, acquired the usual office furniture and equipment for the conduct of a securities business, upon which equipment it paid a personal property tax in Minnesota.

The plaintiff is a clothing merchant of fifty-two years of age, residing in Northfield, Minnesota, who had made various stock investments for himself and his mother, his first experience in making such purchases from the defendant occurring in 1922 or 1923.

There is little dispute in the facts, and it is for the recovery of the total purchase price that the plaintiff brings this action.

It appears from the testimony that the usual method of business was as follows: The defendant's agent would solicit a prospect, urging and recommending the purchase of stock of the National City Bank. Such prospective buyer, contingent upon a purchase, would then make a cash payment, or in lieu thereof turn in other securities to be applied on a certain number of shares at a certain price, or at the then market price. The telegraph operator in the office would then transmit the details to Chicago and so-called confirmation of the sale would later be received. The customer would be communicated with again and advised as to his purchase, and upon contract payments then being made, usually in the Minneapolis office, the stock would be "ordered out", registered if desired by the customer and delivered to him, sometimes directly by mail or at the Minneapolis office, or by manual delivery outside the office—all in Minnesota.

The plaintiff rests his right of recovery on "three separate and independent theories of action":

First, that the sales were void because of a failure to comply with the requirement of registration under the Minnesota Blue Sky Law as applied to the beneficial interest or units the subject of sale in the National City Company. In connection with this theory it is plaintiff's contention that the defendant, having on August 23, 1934, prior to the expiration of six years from the dates of sales by defendant to plaintiff, departed from the state and since that time having resided outside the state, the statute

of limitations has been tolled, and the plaintiff's cause of action under what he terms the Blue Sky Law theory has never become barred.

Second, the plaintiff presents his implied representation theory, it being claimed that when the defendant sold the securities to the plaintiff, such act amounted to a representation in law that the sale was in all respects valid and made in compliance with law; that the act of sale implied representations which he says were false, and that therefore Section 9191, subd. 6, of Mason's 1927 Minnesota Statutes, dealing with limitation is applicable, which reads:

"The following actions shall be commenced within six years: * * *

"For relief on the ground of fraud, in which case the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud."

Third, plaintiff contends that defendant perpetrated a fraud on plaintiff in suppressing and concealing the fact that the securities it sold him were not registered, although the defendant well knew the requirement of registration; and that plaintiff bought in the belief that the transaction was a valid one. Such conduct, plaintiff urges, amounted to express fraud and he claims on this theory of the case that the cause of action did not accrue until his discovery of the facts constituting fraud.

It is conceded that there were no specific or actual representations made as to registration.

Defendant admits the sales but contends they were made in interstate commerce, outside of Minnesota; that the statute relied upon by plaintiff had no application to the facts here; that the plaintiff at all times acted with full knowledge of the circumstances. Defendant pleads ratification, laches and estoppel and that the action is barred by the statute of limitations.

Plaintiff's testimony was in substance that he never learned until the Fall of 1937 that the securities which he bought had not been registered.

A security is defined by Sec. 3996-1 of Mason's Minnesota 1927 Statutes as follows: " 'Security' shall mean and include any stock, share, bond, note, debenture, commercial paper, evidence of indebtedness, investment contract. Interest in or under a profit sharing or participating agreement or scheme, or beneficial interest in a trust or pretended trust. Any interest in any security shall be deemed a security."

The first paragraph of Sec. 3996-4 of Mason's 1927 Minnesota Statutes provides: "No securities shall be sold within the State of Minnesota unless or until such securities have been registered as herein provided."

█ That the Security Act is a valid exercise of the police power of the State, see State v. Nordstrom, 169 Minn. 214, 210 N. W. 1001; State v. Swenson, 172 Minn. 277, 215 N.W. 177, 54 A.L.R. 490; Anderson v. Chase Securities Co., 193 Minn. 443, 258 N. W. 743.

█ That the contract was a Minnesota contract, in my opinion, admits of little dispute. Hardly can the defendant hold itself out to the public as a licensed broker in Minnesota conducting its business under the authority of a Minnesota license and then seek to escape liability from the Minnesota law, following the exercise of such license, on the theory that all its contracts were confirmed outside of Minnesota. The solicitation, the agreement to pay the money and accept the stock, the actual payment, the delivery of the certificates—all suggest the contract was consummated in Minnesota. If what was done in this case does not present a Minnesota contract, it is obvious that the Minnesota law is incapable of application and becomes impotent. Drees v. Minn. Petroleum Co., 189 Minn. 608, 250 N.W. 563. See also Bothwell v. Buckbee, Mears Co., 275 U.S. 274, 48 S.Ct. 124, 72 L.Ed. 277, wherein the Supreme Court of the United States affirmed a Minnesota Supreme Court judgment in an action on an insurance contract where the insurer without a license illegally solicited the same in Minnesota. Bartlett v. Doherty, 1 Cir., 81 F.2d 920, on rehearing 83 F.2d 259; Commissioner of Banks v. Chase Securities Corp., Mass., 10 N.E.2d 472.

█ That the security involved required registration under the Minnesota Blue Sky law, see State v. Ogden, 154 Minn. 425, 191 N.W. 916; State v. Nordstrom, supra. See also Commissioner of Banks v. Chase Sec. Corp., Mass., 10 N.E.2d 472, appeal to U. S. Supreme Court denied Chase Sec. Corp. v. Husband, 302 U.S. 660, 58 S.Ct. 476, 82 L.Ed. 510; McGray v. Hornblower, Mass., 10 N.E.2d 501; Castle v. Acme Ice Cream Co., 101 Cal.App. 94, 281 P. 396; National Bank v. Price, 65 Utah 57, 234 P. 231.

█ Defendant was engaged in the business of selling securities. Its right to do

so in Minnesota could only be in accordance with Minnesota law. It is to be presumed that it knew of the registration requirement. The National City Company was not engaged in the banking business and there were not available to it the exemptions which attached to a national bank.

In its answer defendant alleges the failure of the plaintiff to question the validity of the sales or to tender a return of the property purchased, or in any other manner to attempt rescission of any such sales. It therefore becomes important to determine whether the contract is one to be regarded as void or voidable in the light of Minnesota decisions. If the controversy is one arising between the original contracting parties, the cases presently to be cited and which I regard as controlling here do not require or prescribe the doing of anything on plaintiff's part with reference to rescission or tender before suit. If third party rights have intervened, there are cases which undertake the protection of those who are innocently harmed in the situation, and a purchaser may have so conducted himself as to induce reliance by a third party under circumstances suggesting the application of principles of estoppel. Plaintiff contends that no value, market or otherwise, can exist because the security was unlawfully sold in direct violation of the statute, and under applicable Minnesota decisions the sale therefore becomes void.

In Vercellini v. U. S. I. Realty Co., 158 Minn. 72, 196 N.W. 672, it was contended by the defendant that plaintiff was obliged to make restitution. The headnote contains the statement: "The purchaser of such a contract got nothing of value when he parted with his money, and has nothing to restore as a condition precedent to a recovery." The court said: "It is contended that there can be no recovery because respondent has not made or offered to make restitution. But he received nothing of value. All he got was an investment contract issued and sold in violation of a penal statute." The court further found that the contract was made worthless because of the violation of the law. There was nothing inherently wrong in the giving of an option agreement affecting an interest in realty. It became tainted only when made in violation of the Blue Sky Law.

In Webster v. U. S. I. Realty Co., 170 Minn. 360, 212 N.W. 806, it was held that [page 807] "the purchaser was not a party to the violation of the statute. He is not in pari delicto with the seller. The statute was intended to protect one class of people against the imposition of another class. The basis of this rule is that no one shall be allowed to enrich himself at the expense of another through his own wrongful act."

In Drees v. Minn. Petroleum Co., 189 Minn. 608, 250 N.W. 563, the court said [page 565]: "It was not necessary to rescind or tender back the stock certificates before bringing suit. Where the purchaser has received no tangible property of the corporation and no deed or transfer of any such property, but receives only a void paper certificate of stock, the bringing of the suit is a sufficient disaffirmance of the sale. A tender of rescission would have been futile. The action is not one in quasi contract for recovery of money had and received by the corporation on an implied promise to repay, but for recovery on the ground of tort." The decision in this case is consistent only with the conclusion that the contract was void, not voidable. The instant case arises directly between plaintiff and defendant, who were the purchaser and seller, respectively. No creditor or third party interest exists.

The defendant relies on Parker v. Merritt, 164 Minn. 305, 204 N.W. 941; Marin v. Olson, 181 Minn. 327, 232 N.W. 523; and Edson v. O'Connell, 190 Minn. 444, 252 N.W. 217. Both the Parker and Marin Cases involved an assessment against the stockholders. The court in the Parker Case said with reference to defendant's contention [page 942]: "The argument is that, because the stock sale was prohibited and penalized by the statute, the contract was void, and in consequence Merritt never became a stockholder. On the question of membership we hold otherwise. The corporation was prohibited from selling. Its act of sale and not the innocent buyer's act of purchase was the thing prohibited and penalized." Citing Vercellini v. U. S. I. Realty Co., supra.

The word "membership," as used above, is significant in that the buyer in allowing his name to remain on the books as a stockholder was estopped as against creditors from asserting invalidity in the sale. In making this decision the Supreme Court

made special reference to the Vercellini Case, supra, as follows: "There is nothing to the contrary in the Vercellini Case, which was a straight action to recover money paid on a contract sold in violation of the 'Blue Sky' law. It was against the original vendor itself and of course was successful. There was no element of estoppel against the plaintiff, and the situation was quite in contrast to that of Mr. Merritt, who, however invalid his stock subscription might have been, was estopped as against creditors to assert that invalidity."

Further, the Supreme Court has indicated the view that the policy of the Blue Sky Law was not promoted by treating an innocent third party as a violator with consequent penalties upon him, and said: "That and many similar cases should make clear the distinction between the effect of the invalidity of a stock subscription, standing alone, which may not make a stockholder out of the subscriber, and the result of his subsequent conduct with respect to his relationship to the corporation, which may prevent his escape from the liability of a stockholder in case of insolvency."

The case of Marin v. Olson, supra, involves much the same situation as is presented in the Parker Case, and the court there said:

"Defendant relies upon the case of Vercellini v. U. S. I. Realty Co., 158 Minn. 72, 196 N.W. 672. A careful reading of that opinion clearly shows that the decision of the lower court in the instant case cannot be reversed on its authority. That was an action seasonably brought to recover money paid on a contract sold in violation of the Blue Sky Law. It was against the original vendor and recovery was permitted.

"However, where, as in this case, a receivership is in force and the rights of creditors and third parties have intervened, a different situation is presented. Defendant cannot escape the liability imposed by the constitution (article 10, § 3) on stockholders in a corporation by asserting that the sale of stock to him violated a penal statute."

■ In Edson v. O'Connell, supra, the president of the corporation sued the defendant on a promissory note. The defendant borrowed money from the plaintiff to purchase stock in a corporation in which the plaintiff was interested. The sale by the corporation of the stock to the defendant was in violation of the blue sky law. The defendant contended that there was such a linking together of the note and stock as to render the obligation created by the note void and unenforceable. The lower court was sustained in the finding that the "plaintiff made no false or fraudulent representations to defendants or any of them as inducements to execute the note." The Supreme Court further found there was not "any deceit or fraud of any person", 252 N.W. 218, and reiterated the rule in Minnesota, that where third party interests intervened "the purchasers of stock sold in violation of the Blue Sky Law could not rescind or recover what was paid for it." Where the rights of creditors or third parties intervene, a purchaser may be held to be estopped, but the contract of purchase of securities in violation of the statute between the original parties is none the less a void transaction. When the court found in this case that the lower court was warranted in its finding that the plaintiff had no such connection with the transaction as tainted his note, that disposed of the case. Describing the transaction as voidable as to the purchaser, is not synonomous with saying it was voidable so far as the seller was concerned. This must be so because in Minnesota the penalties are all laid on the seller since he is the only violator. The purchaser is regarded as an innocent party, and the court reiterated the rule that: "We have held that, where the rights of creditors have intervened, the purchasers of stock sold in violation of the Blue Sky Law could not rescind or recover what was paid for it." Citing Parker v. Merritt and Marin v. Olson, supra.

The following illustration from plaintiff's brief seems apt: Suppose a purchaser bought units from the National City Company and gave it a promissory note for $5000 to pay for the same. Suppose further that the National City Bank became insolvent and was taken over by the Comptroller of the Currency, who then levied an assessment. Suppose the Comptroller of the Currency brings an action against the purchaser to recover a statutory assessment. At the same time the National City Company or its appropriate representative brings an action against the purchaser to recover on the note. The results in both such actions is clear from the Minnesota decisions. The Comptroller of the Currency would be entitled to recover from the purchaser because he is estopped to

deny his membership in the corporation. The National City Company could not recover from the purchaser on the note.

From other jurisdictions, see Walker v. Harbor Realty Co., 214 Cal. 46, 3 P.2d 557; United Power & Trust Co. v. Joyner, 40 Ariz. 229, 11 P.2d 829; and the recent case of Bartlett v. Doherty, D.C., 8 F.Supp. 763; Doherty v. Bartlett, 1 Cir., 81 F.2d 920, on rehearing 1 Cir., 83 F.2d 259, which involved a construction of a New Hampshire Act entitled "An Act to Protect the Public Against the Sale of Worthless Securities". Laws N.H.1917, c. 202. The sale of unregistered securities was made a crime but it did not expressly provide that unregistered sales should be void. Ratification was plead as was laches, and following the decision of the New Hampshire Supreme Court the Court of Appeals said in part, 81 F.2d 924: "The weight of authority and reason appears to hold no rescission is essential to the right of recovery where the contract is void. Where a transaction is void as against public policy, there is nothing to rescind. * * * Any agreement in the form of a contract under such circumstances has no existence in the eyes of the law. The law annuls it. * * * The bringing of the action amounts to a repudiation of the transaction as far as any rescission is required. At least, in New Hampshire a tender of the property received under the void contract is sufficient if made at the time of trial, which was done in these cases."

I am unable to recognize any distinction between the holding in the last cited case and that of the Minnesota Supreme Court in the Vercellini and Drees Cases to the effect that illegal sales of unregistered securities cannot be the subject of ratification between the original parties thereto.

Coming next to the application of Section 9200 of Mason's 1927 Minnesota Statutes to the facts in this case. The defendant, as heretofore appears, has been licensed to do business in Minnesota as a foreign corporation and as a dealer in securities and pursuant to which license did extensive business in Minnesota. Thereafter it departed from the state after formally withdrawing therefrom, cancelled its license to do business as such foreign corporation and as a dealer, closed its offices, discharged its employees and took its property and assets out of the state. Section 9200 provides: "Effect of absence from the state—If, when a cause of action accrues against a person, he is out of the state, an action may be commenced within the times herein limited after his return to the state; and if, after a cause of action accrues, he departs from and resides out of the state, the time of his absence is not part of the time limited for the commencement of the action."

Defendant's position is that the statute has not been tolled because the defendant was amenable to process by service made upon the Commissioner of Securities as to its security business and upon the Secretary of State in actions arising out of business transacted under its license to do business. Minnesota authority for the statement that the mere fact that substituted service can be made upon a debtor during his absence does not prevent his absence from the state from tolling the statute of limitations, is found in Rogers v. Benton, 39 Minn. 39, 38 N.W. 765, 12 Am.St.Rep. 613. In that case a mortgage foreclosure was attempted by advertisement. Possession was taken by the mortgagee in possession. His claim to superior title depended upon whether or not his right to foreclose by action had been barred when he took possession, he taking the position that due to the absence of the mortgagor the statute of limitations was tolled. The Supreme Court by Justice Mitchell disposes of the contention that amenability to service of process is equivalent to presence within the section of the statute quoted, by saying [page 767]: "It was of no legal importance that his family remained behind. The fact that Conant might, notwithstanding the new residence of the mortgagor, have resorted to substituted service of the summons, would not take the case out of the statutory exception. The right to foreclose by action, therefore, still existed when the Conants entered into possession."

Defendant relies on the case of City of St. Paul v. Chicago M. & St. P. Ry. Co., 45 Minn. 387, 48 N.W. 17, but I do not believe the holding in that case is out of harmony with the Rogers Case. In the St. Paul Case the defendant was in fact present and materially so, carrying on business in Minnesota, with officers and agents furthering its interests. The facts in the two cases are wholly dissimilar. The defendant railway company, a foreign corporation, pleaded the statute of limitations in an action to abate a nuisance and for ejectment. The defendant was licensed to

transact business in the state and was actually engaged in so doing. True, it was organized in a foreign state. The court held in the St. Paul Case that a foreign corporation was not theoretically absent when in fact its presence was being manifested by its ownership of property and the doing of business within the state. In the instant case there is a complete absence of the defendant and a deliberate and utter cessation of business by the defendant within the state. All that was left behind by the defendant was a compelled compliance with the statute as made it amenable to service. "No mere theoretical absence from the state" can be reconciled with an absence which is actual and complete. To find that amenability to service is presence within Section 9200, as defendant contends, requires the injection into the statute of new matter, which is for the legislative branch and cannot be supplied by judicial construction. Parker v. Kelly, 61 Wis. 552, 21 N.W. 539; Keith-O'Brien Co. v. Snyder, 51 Utah 227, 169 P. 954; Wilson v. Appleton, 17 Mass. 180. The statute requires departure from and residence out of the state as a condition to tolling the statute and makes no exception in the case of withdrawal and appointment of an agent for service of process.

It is admitted that there are two lines of cases which are difficult to reconcile, which bear directly on the matter under discussion. Bode v. Flynn, 213 Wis. 509, 252 N.W. 284, 94 A.L.R. 480, and Maguire v. Yellow Taxi Corp., 253 App.Div. 249, 1 N.Y.S.2d 749, support the position of the plaintiff that the departure from and residence out of the state will toll the statute, notwithstanding that jurisdiction may be obtained by service of process on a designated agent. Defendant relies upon Walker v. L. E. Meyers Construction Co., 175 Okl. 548, 53 P.2d 547, and Title Guaranty & Surety Co. v. McAllister, 130 Ohio St. 537, 200 N.E. 831.

■ There is no question but that the defendant withdrew from Minnesota in August, 1934, when in compliance with Section 7494 of Mason's 1927 Minnesota Statutes, it designated the Secretary of State for the service of process as well as appointing the Commissioner of Securities as its Attorney for the service of process, and the question arises, did such limited power prevent the tolling of the statute. While licensed in the state and authorized

to carry on its business under the Securities Act in the manner and to the extent it did, jurisdiction over the defendant could be obtained in any suit or proceeding regardless of its character or whether it arose within the State or elsewhere. No restrictions existed in that regard. Enger v. Midland Nat. Life Ins. Co., 176 Minn. 143, 222 N. W. 901; Rishmiller v. Denver & Rio Grande R. Co., 134 Minn. 261, 159 N.W. 272; Bagdon v. Philadelphia & Reading Coal & Iron Co., 217 N.Y. 432, 111 N.E. 1075, L.R.A.1916F, 407, Ann.Cas.1918A, 389. After August 23, 1934, service on the Secretary of State was with reference to claims arising out of business transacted by the defendant within the state while licensed as a foreign corporation. Anderson v. Chase Securities Corp., 193 Minn. 443, 258 N.W. 743. Likewise the appointment of the Securities Commissioner as agent for service of process was limited following defendant's withdrawal from the state to actions arising out of brokerage business conducted by the defendant while so licensed. Dragon Motor Car Co. v. Storrow, 165 Minn. 95, 205 N.W. 694; Streissguth v. Chase Sec. Corp., 198 Minn. 17, 268 N.W. 638.

■ The foregoing distinctions become important in attempting clearly to construe Section 9200. If the ability to make service was limited as to the character of action for which the defendant was amenable, there results a bearing on the question whether defendant thereafter was a resident of the state within the meaning of the statute. Very clearly under the statute a defendant must "depart from" the state and it must "reside out of" the state. Section 7494 specifically permits under certain circumstances that a foreign corporation might "withdraw therefrom". There is little difference in substance between "withdraw therefrom" permitted by Section 7494 and "departs therefrom" as used in Section 9200. If in fact no difference exists between the two expressions, when a foreign corporation complies with Section 7494, such corporation immediately is caused to "depart from" the state within the meaning of Section 9200. The passage of Section 7494 followed the decision of the Minnesota Supreme Court in American Loan & Investment Co. v. Boraas, 156 Minn. 431, 195 N.W. 271, holding that when a foreign corporation had once been licensed under the laws of this state, it could not withdraw from the state or revoke the authority of its statutory agent.

The Minnesota Supreme Court had therefore found amenability to service to exist before the passage of the statute, which was enacted following the Boraas Case. As to a natural person, the statute is suspended when he departs from and resides out of the state. See Venable v. Paulding, 19 Minn. 488, 19 Gill. 422. Surely a foreign corporation cannot claim more under the statute than is permitted a natural person.

The defendant places reliance upon Burzinski v. Kinyon Investment Co., 192 Minn. 335, 256 N.W. 233; Olesen v. Retzlaff, 184 Minn. 624, 238 N.W. 12, 239 N.W. 672, 78 A.L.R. 891; Vogel v. Chase Securities Corp., D.C., 19 F.Supp. 564, to support its contention that the doctrine of implied representations has no application to a sale of securities in violation of the Blue Sky Law.

The Burzinski Case involved the sale of a non-participating certificate in alleged violation of the 1923 Blue Sky Law, Gen. Stat.1923, section 3978. By section (g) the Act did not apply where the indebtedness secured is not more than 70% of the fair value of the property mortgaged. The lower court's finding that the security "was not more than seventy (70%) per cent of the fair value of the property mortgaged" was affirmed, and removed the "mortgage from the operation of the act." [Page 235.] The court continued and said: "The cause of action based on the violation of sections 3977–4000, Gen.St.1923, accrued when the sale was made." This was not necessary to the decision. It may be observed that the court said nothing as to the accruing of a cause of action based upon implied misrepresentations.

 The violation creating the cause of action may also be the basis of an action in fraud. "That there may be actual and actionable fraud justifying a recovery, apart from the statute, and within the meaning of section 9191 (6), is without much doubt." Olesen v. Retzlaff, 184 Minn. 624, 238 N.W. 12, 14, 239 N.W. 672, 78 A. L.R. 891. The Olesen Case was an action against non-resident directors receiving deposits while a bank was insolvent. The bank was not a party. It was not claimed that the directors either knew of the receipt of plaintiff's deposits or had any direct connection with the transaction. They were sought to be held because of the provisions of General Statutes 1923, Section 10407, making it an offense for directors to receive deposits in an insolvent bank. The court said: "To avoid the bar of the statute he [plaintiff] must prove more than a violation of section 10407. * * * That the bank was insolvent or unsafe was important. * * * The facts constituting a cause of action required more, that is, knowledge or good reason to know" of the bank's insolvency when the deposits were made. An action for fraud could have been maintained independent of the statute. Therefore, a violation of the statute involved in the Olesen Case did not necessarily establish by implication representations which could be the foundation of a fraud action. As pointed out in McClure v. Central Trust Co., 165 N.Y. 108, 58 N.E. 777, 53 L.R.A. 153, when dealing with sales of securities there are implied representations which flow from the fact of sale and wholly irrespective of the Blue Sky Law. The rule of caveat emptor has been modified and the sale itself may give rise to implied representations just as effectively as though the seller had made express statements to the same effect. Both of the cases last mentioned are authority for the statement that an action for damages for violation of the Blue Sky Law accrues when the sale is made, but they are not controlling for the proposition that where a plaintiff draws his complaint on the theory of actual fraud based on either express or implied misrepresentations, the six years begins to run before the discovery of the fraud.

The Vogel Case, supra, was before Judge Nordbye of this court, as he clearly points out, 19 F.Supp. 565, "for the sole and simple purpose of objecting to the jurisdiction of the court in the above-entitled action, and for no other purpose." The defendant asked for an order quashing the service of summons. Judge Nordbye did say that there was incidentally raised before him the question of the statute of limitations that applied and also said that it was not directly before him on the motion to' quash. Opposing counsel in their briefs recognized that the question of whether the non-residence of the defendant tolled the running of the statute was not before the court and as to this the defendant in his brief said, "The running of the statute of limitations is not before the court and therefore immaterial." In view of which circumstances I do not think that on ·a motion of the character submitted to Judge Nordbye his comment on the statute

of limitations can be accepted as a deliberate judgment.

Further as to implied representations: "The mere act of contracting may under certain circumstances constitute an implied representation of the existence or non-existence of certain facts and render the maker thereof liable in fraud for its falsity." 26 C.J. 1069(10).

"Fraud may be classified as actual and constructive. * * * Actual fraud is intentional fraud. It consists in deception, intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the end designed. * * *. Constructive fraud is a breach of legal or equitable duty, which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." 26 C.J. 1060, 1061.

Implied fraud rather than being identical with constructive fraud is a species of actual fraud. Actual fraud may consist in either express or implied misrepresentations. Implied fraud consists in deception practiced through representations. Implied fraud consists in deception practiced through representations implied from conduct as distinguished from representations expressly made.

McClure v. Central Trust Co., supra, was a case in rescission based on fraud and deceit where no express representations were made by defendant to plaintiff. The court quoted with approval from Story on Promissory Notes: "The seller of a note warrants, by implication, unless otherwise agreed, that he is the lawful holder and has a just and valid title to the instrument, and a right to transfer it by delivery; that the instrument is genuine, and not forged or fictitious; that it is of the kind and description it purports on its face to be, and that he has no knowledge of any facts which prove the instrument, if originally valid, to be worthless, either by failure of the maker, or by its being already paid, or otherwise to have become void or defunct."

In McDonald v. Reich & Lievre, 100 Cal.App. 736, 281 P. 106, 108, the court said: "When a corporation issues to the public certificates of stock, regular on their face, it amounts substantially to a representation that the certificates are regular and valid."

It would seem to follow axiomatically that refusal to comply with the law designed to prevent fraud is of a species of fraud. See also Fish v. White, 180 Iowa 1176, 162 N.W. 753; Rhines v. Skinner Packing Co., 108 Neb. 105, 187 N.W. 874; Walker v. Harbor Realty Co., 214 Cal. 46, 3 P.2d 557.

From all of which I conclude that the sales made to plaintiff by the defendant, the subject matter of this suit, were in violation of the Minnesota Blue Sky law and were void; that the tender by the plaintiff on trial of the return and redelivery of the certificates represented by the various sales, together with all dividends received, was sufficient; that on the 23rd of August, 1934, defendant departed from and ever since has been a resident outside the State of Minnesota, and that the statute of limitations in that connection has been tolled; that the defendant impliedly represented that the sale of the various units was genuine and in all respects a compliance with the law and that these representations, though false, were relied upon by the plaintiff; that nowhere in the record does it appear that plaintiff made any discovery of the falsity of the implied representations until the Fall of 1937; that his cause of action is not barred because the statute of limitations did not commence to run until the Fall of 1937; that plaintiff can therefore recover the purchase price represented by said sales, with interest.